JOHN MORRISON vs. A. PARKER BROWNE & another.

Suffolk.   January 16, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Frauds, Statute of.   Sale.   Contract.*

In an action of contract for the non-delivery of a barge load of coal, in which the
defendants set up the statute of frauds, the plaintiff put in evidence the follow-
ing alleged memorandum in writing of the contract, addressed to one who acted
in the transaction for J. M., the plaintiff, and signed by the defendants: " Dear
Sir : Confirming the agreement made by our Mr. O. with you today.   We have en-
tered an order for a barge load of anthracite coal, one bin each of egg, stove and
nutt, to be shipped to J. M., East Boston.   We are to bill this coal to Mr. M.
at $8.50 per ton f. o. b. at Perth Amboy, and are to pay you a commission of
25c. per ton.   The coal to be paid for cash on delivery of the bill of lading.
We have bought this coal with the understanding that it is to be loaded next
week, and have engaged a barge of about 800 tons' capacity from the B. L.
Transportation Co. at $1.25 freight to transport same.   Please get Mr. M. to
send us a written confirmation of this order."   There was evidence that an
oral contract of sale had been made in accordance with the terms named in
the memorandum.   *Held,* that the memorandum was one of a sale and not of
a mere offer to sell, and was sufficient to satisfy the statute of frauds.

- CONTRACT for alleged breach of an oral contract to sell to the
plaintiff a barge load of about eight hundred tons of anthracite
coal for the price of $8.50 per ton to be delivered by the defend-
ants free on board a vessel at Perth Amboy, New Jersey, and to
be loaded during the week beginning November 30, 1902.   Writ
dated January 24, 1903.

The answer contained a special denial and set up the statute
of frauds.   At the trial in the Superior Court before *Hardy,* J.
it appeared that at the time the contract was made the plaintiff
was engaged in the retail coal business in Boston, and the de-
fendants were copartners engaged in the business of buying and
selling coal in Boston under the firm name of F. H. Odiorne and
Company.

Odiorne Swain, one of the defendants, called as a witness by
the plaintiff, testified that he was one of the partners in the
firm of F. H. Odiorne and Company, and that he and one
Browne attended to the business of the firm together; that
between October, 1902, and January 15, 1903, he purchased

only one cargo of coal, and that that cargo consisted of eight
hundred tons of anthracite coal, egg, stove and nut mixed, which
he bought from Meeker and Company of New York at $8 per
ton f. o. b. at Perth Amboy, N. J.; that his firm had an offer of
this coal from Meeker and Company, and that with his approval,
his firm acting as brokers, his salesman, one O'Brien, offered
the same for $8.50 per ton f. o. b. at Perth Amboy; that the
offer was made to one Betteley, who reported it to the plaintiff;
that upon O'Brien's report to the witness of his interview with
Betteley the witness wrote a letter to Betteley, which was pro-
duced, identified by the witness and was admitted against the
objection of the defendants.   The letter was as follows:

"F. H. Odiorne & Company,

"147 Milk Street, Room 504,

"Shippers of Anthracite, Bituminous & Gas Coal.

"Boston, November 28th, 1902.

"Mr. Albert C. Betteley,

"44 Kilby Street,

"Boston, Mass.

"Dear Sir: —

"Confirming the agreement made by our Mr. O'Brien with
you today.

"We have entered an order for a barge load of anthracite
coal, one bin each of egg, stove and nutt, to be shipped to John
Morrison, East Boston.

"We are to bill this coal to Mr. Morrison at $8.50 per ton
f. o. b. at Perth Amboy, and are to pay you a commission of 25c.
per ton.   The coal to be paid for cash on delivery of the bill of
lading.   We have bought this coal with the understanding that
it is to be loaded next week, and have engaged a barge of about
800 tons' capacity from the Bee Line Transportation Co. at $1.25
freight to transport same.

"Please get Mr. Morrison to send us a written confirmation
of this order.

"Yours truly,

"F. H. Odiorne & Co."

The witness then was asked, "You state you have entered an
order for a barge load of anthracite coal.   Where did you enter

that order, on your books?" and answered "Made a memorandum on our books."

The witness further testified that he did not remember whether he actually accepted the offer of Meeker and Company before writing this letter, or whether this was done after the writing of the letter; that the two transactions were as nearly as possible at the same time; that he had "a complete agreement, an agreement that was completed at some time with Meeker to furnish me that coal."

The witness testified that with reference to writing and making the entry on his books, he thought that he followed out his usual custom when making a contract for the sale of coal.

He then was asked, "And that wording that you have put in there ' We have entered an order for a barge load of anthracite coal,' and followed up by the entry which you made on your books, is your usual course when you make a sale of coal, is it not?" and answered, "We do not have any usual custom about that, sir. We do that in different ways, at different times, under different conditions."

Betteley to whom the letter printed above was addressed testified that he was a coal dealer in Boston; that on November 28, 1902, O'Brien, who is named in the letter, representing F. H. Odiorne and Company came to his office, and Betteley, acting for the plaintiff, made with O'Brien an oral contract for the purchase of the coal on the terms named in the letter; that he told O'Brien that he wanted a memorandum of the sale and that O'Brien brought him the letter printed above.

He further testified that he notified the plaintiff over the telephone in the presence of O'Brien that the sale had been consummated; that a day or two afterwards he called at the office of F. H. Odiorne and Company and asked the defendant Swain what were the prospects of shipping that cargo he had sold to Morrison, and that he was told by Swain that the coal would be loaded in a few days; that Swain asked him if he had an acknowledgment from Morrison, and he said that Morrison had telephoned him twice and that Morrison wanted the coal; that when asked whether he had an acknowledgment in writing he said that he had not, and that Swain said, "Why don't he send it over?" and that the witness replied, "Well, I

presume he will, that is all right"; that that was all the conversation they had. When the witness was asked whether Swain made any reply to that he answered that he offered no objection; that a few days afterwards he saw O'Brien in relation to the cargo, and in reply to his inquiries was told that they were waiting for the barge to get there and the cargo to be shipped.

At the close of the evidence the judge ruled, as stated in the opinion, that there was no sufficient memorandum to satisfy the statute of frauds, and ordered a verdict for the defendants, stating "The evidence to my mind is convincing that this was really an offer on the part of the defendants in reference to this cargo of coal, and the terms of the contract had not been sufficiently shown here, by the contract put in evidence, — the writing, — to comply with the statute, therefore, I shall have to order a verdict for the defendants." The plaintiff alleged exceptions.

*E. E. Blodgett,* (*R. E. Goodwin* with him,) for the plaintiff.

*H. N. Shepard,* for the defendants.

MORTON, J. This is an action of contract to recover damages for failure to deliver a cargo of coal. The question is whether there was a sufficient memorandum of the contract within the statute of frauds. The judge ruled that there was not, and directed a verdict for the defendants, and the case is here on exceptions by the plaintiff to this ruling. We think that the ruling was wrong, and that the case should have been submitted to the jury under proper instructions.

There was testimony tending to show that a sale was made as alleged, and the jury should have been instructed that if they found that, taking all of the circumstances into account, a sale was made as alleged, then the writing relied on constituted a sufficient memorandum within the statute. As was said of the memorandum in *Sanborn* v. *Flagler,* 9 Allen, 474, so it may be said of the memorandum here: "The nature and description of the merchandise, the quantity sold, the price to be paid therefor, the terms of payment and the time within which the article was to be delivered, are all clearly set forth." According to the terms of the memorandum, the coal was to be shipped and billed to John Morrison (the plaintiff), thus clearly indicating him as the purchaser, and the memorandum was signed

by the defendants, the parties to be charged thereby. It is to be regarded also, we think, as a memorandum of a sale, and not of an offer to sell. It states that " we have entered an order for a barge load of anthracite coal "; and one of the defendants testified, though subsequently qualifying it, that in making this entry " he thought that he followed out his usual custom when making a contract for the sale of coal." It also states that, " we have bought this coal with the understanding that it is to be loaded next week, and have engaged a barge of about 800 tons' capacity from the Bee Line Transportation Co. at $1.25 freight to transport same," — circumstances which are more consistent, to say the least, with an actual sale than with an offer to sell. The concluding sentence in which the defendants ask Betteley, to whom the writing containing the memorandum is addressed, to " get Mr. Morrison to send us a written confirmation of this order," can only be regarded, we think, as a request to him to do what he there is asked to do. Moreover, if the written confirmation there asked for could be regarded as in the nature of a condition precedent, there was evidence which would have warranted the jury in finding that the defendants were content with an oral confirmation by the plaintiff and waived a confirmation in writing. The objection that the sale was to Betteley because the writing containing the memorandum was addressed to him does not need extended consideration. As already observed the memorandum clearly designates Morrison as the party to whom the coal was sold, and there was evidence tending to show that Betteley was acting only as a broker.

*Exceptions sustained.*