Joseph W. Serhant et al., appellants, v. Gooch Milling & Elevator Company, appellee.

Filed September 26, 1914. No. 17,816.

1. **Statute of Frauds:** MEMORANDUM OF SALE: SUFFICIENCY. The written memorandum of a contract for the sale of goods and chattels for the price of $50 or more, required by the code of civil procedure (section 2631, Rev. St. 1913), need not be signed by both parties. The requirement is sufficiently met if the memorandum is signed by the party to be charged thereby.

2. **Contracts:** SIGNING: WAIVER. The rule that when a condition is attached to the making of a proposed contract that both contracting parties shall sign the same, and one party neglects or refuses to sign, the party signing is not bound thereby, does not apply where the party who has signed, after discovering the neglect of the other party to sign, ratifies the contract as made and signed, and declares his intention to proceed under it. He thereby waives the failure of the other party to sign.

3. **Sales:** BREACH OF CONTRACT: SUFFICIENCY OF PETITION. The petition set out in the opinion examined, and *held* not vulnerable to a general demurrer.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Bartos & Bartos* and *Hall & Bishop,* for appellants.

*Charles S. Roe, contra.*

FAWCETT, J.

This action was instituted in the district court for Lancaster county, for damages on account of the breach of a contract of the defendant to sell 400 barrels of flour to

plaintiffs. A general demurrer to the petition was sustained and plaintiffs' action dismissed. Plaintiffs appeal.

The petition alleges that the contract was not in writing, but that a memorandum thereof, in the nature of an order for purchase and sale, was made and signed by J. J. Langer, who was and was acting as the agent for the defendant. The form of the order is set out thus:

"Date Line ———— Jan. 16, 1909.
"GOOCH MILLING & ELEVATOR COMPANY, LINCOLN, NEBRASKA.
"Sold to Kryda & Company, Chicago, Ill.
"Shipment—February    Via C. B. & Q.
"Terms—as before
"No. Lbs.—Brands  Size Bbls.  Price of cwt.  No. of bags.
"400 brls.—Old Settlers           4.70
    "All orders must be signed by purchaser.
    "Ordered by ————————.
                        "J. J. Langer, Salesman.
    "All orders subject to confirmation by mail."

The petition further alleges that plaintiffs accepted the order verbally as offered by defendant at the time it was made, and bears date, in Chicago, Illinois, with the said Langer for and on account of the defendant; that in the memorandum the reference, "Shipment: February, Via C. B. & Q.," means and refers to the agreement that the flour should be shipped and delivered to plaintiffs in Chicago during the month of February; that the words "terms as before" mean and refer to a similar former memorandum of the purchase and sale of flour between the same parties, in which the terms of the purchase were written, and which indicate that the flour should be paid for at the price of $4.70 per barrel on 30 days' time, or, if payment were made within ten days from the time of delivery, a discount of two per cent. on the price was to be allowed; that the words and figures in the memorandum "400 brls." under the heading of "No. lbs.," and the words "Old Settlers" under the heading "Brands," and the figures "4.70"

under the heading "price of cwt." mean that it was agreed between the parties that 400 barrels of the brand of Old Settlers flour were bought by plaintiffs and agreed to be delivered at the price of $4.70 per barrel of 196 pounds weight; and that the signature of Langer at the bottom of the memorandum was the signature and execution of the memorandum of the contract by him as agent and salesman for the defendant. It is further alleged "that the memorandum referred to, which is blank under the heading 'size bbls.' and 'No. of packages,' indicates, as the agreement was between the parties, that the flour should be shipped in packages or sacks of 98 lbs. weight, and that, if any portion of the flour was desired to be shipped in smaller or larger packages, the designation of their size would, by the understanding of the parties, their course of dealing in the similar purchases just preceding this, and by the general custom of the trade, have been entered on said memorandum. The plaintiffs further designated and directed that said 400 barrels of flour be shipped in 98-pound sacks or packages when said memorandum was made, and so directed said Agent Langer." It is further alleged that on or about January 20, 1909, Langer delivered the memorandum and order for the flour to defendant, and defendant wrote plaintiffs a letter, which was received in due course by mail, which letter was as follows:

"Gooch Milling & Elevator Company.
"Manufacturers of Hard Winter Wheat Flour,
"Lincoln, Nebraska, Jan. 20, 1909.

"Kryda & Company, Chicago, Ill. Gentlemen: We have your order of the 16th inst. given to our Mr. Langer, for 400 barrels of Old Settlers flour at $4.70 per bbl. to be shipped to you in February. We thank you for this order and it shall have our careful attention. We await shipping instructions from you for our next car and hope you will be able to give them to us soon. Yours truly,

"Gooch Milling & Elevator Company,
"F. E. Roth, Secretary."

It is further alleged that defendant failed and refused to ship any or all of the flour so purchased during the month of February to the plaintiffs, "although they often requested said defendant so to do, orally on giving the order, at times in Feb., May 8 and 28, and by letter in the hand of defendant about May 14, 26, and June 3, 1909, and were ready and willing to pay the price agreed upon for said flour according to the terms of said agreement and memorandum;" that at all times mentioned plaintiffs were engaged in the wholesale and retail selling of flour in the city of Chicago; that the order was given defendant for the flour in controversy for the purpose of meeting and fulfilling contracts made by plaintiffs for the sale of flour during the month of February, 1909, and at the time the contract was made and the order for shipping flour was given plaintiffs were taking orders for the sale and delivery of the flour during the month of February, "all of which was well known to the defendant; that during the said month of February the market price of flour of the quality and grade of 'Old Settlers' flour, purchased from the defendant, increased to $6.05 per barrel on the market at Chicago, and the plaintiffs could and would have obtained that price for the flour so bought of the defendant, if the same had been delivered as was agreed to be done;" that, by reason of the failure of defendant to deliver the flour, plaintiffs were compelled to order other flour to fill their orders for that month at the advanced price named, and were prevented from making the profits stated on the flour purchased from the defendant, to their damage in the sum of $540, for which they pray judgment.

Plaintiffs state in their brief that the demurrer was based on two objections: First, that the contract for the sale of the flour was not mutual between the parties, no obligation having been assumed by plaintiffs to take and pay for the flour; and, second, that the memorandum of the contract, which was a sale order, did not satisfy the statute of frauds, not having been signed or confirmed in writing by the purchaser. Defendant's brief insists: (1) That the contract was not enforceable against either party

under the statute of frauds and was equally inoperative
and unenforceable against either party regardless of the
statute; (2) that the conditions to the contract prescribed
by the defendant to be performed by plaintiffs were con-
ditions precedent to the creation of a contract obligating
the defendant; (3) that the defendant never contracted
absolutely, but upon the condition that the contract was by
the plaintiffs' acts to be rendered mutually enforceable
between the parties; (4) that when a condition is attached
to the making of a proposed contract that both the parties
shall sign the contract, and one party neglects or refuses,
to sign, the party signing is not bound by the contract,
whether or not the contract is within the statute of frauds;
and (5) that a petition tested by demurrer must be con-
strued most strongly against the pleader. We have con-
cluded to follow the lines thus pointed out by defendant in
its brief, in disposing of the case.

1. Taking the proper allegations of the petition, which
are admitted by the demurrer to be true, we think it is
clear that, if there were no statute of frauds, the contract
would be enforceable. The petition very clearly and ex-
plicitly alleges that the contract was a contract of sale by
defendant to plaintiffs of 400 barrels of flour at $4.70 per
barrel; that plaintiffs purchased the flour for the purpose
of filling their contracts with their customers, which fact
was well known to the defendant; that, by reason of the
great advance in the price of flour during the month of de-
livery, defendant refused to deliver, as agreed, and alleges
the price which plaintiffs were compelled to pay in the open
market in order to fill their contracts. This stated a valid
and enforceable contract, if the requirements of the stat-
ute of frauds were met. The statute relied upon is section
2631, Rev. St. 1913, which provides: "Every contract for
the sale of any goods, chattels, or things in action, for the
price of $50 or more, shall be void, unless: First. A note
or memorandum of such contract be made in writing and
be subscribed by the party to be charged thereby." We
think the memorandum constitutes a sufficient compliance
with the statute. There are authorities holding that, in or-

der to constitute a compliance with such a statute, the memorandum must be signed by both parties; but the clear weight of authority is against that holding. In Wood, Frauds, sec. 405, it is said:

"Memorandum need only be Signed by the Party to be Charged. The fourth section of the statute of frauds requires that the note or memorandum shall be signed 'by the party to be charged,' and the seventeenth 'by the parties to be charged.' The object of the statute is to afford protection against fraud and perjury, and the means employed are requiring a written memorandum and preventing a recovery by mere oral proof. *The end and object of the statute are attained by written proof of the obligation of the defendant.* He is the party to be charged with a liability, and the one intended to be protected against the dangers of false oral testimony. To say that the plaintiff or the party seeking to enforce a contract is himself a party to be *charged* therewith is a perversion of language. The term 'parties' is used in connection with the words '*to be charged* thereby,' and does not include *all* the parties to the contract. It is, on the contrary, limited and restricted by the qualifying words to such only of those parties as are to be bound or held chargeable, and legally responsible on the contract, or on account of a liability created by or resulting from it. If to include all the parties had been intended, those words 'to be charged thereby' would have been unnecessary and superfluous. The appropriate language to express such intention would have been that the note or memorandum should be subscribed 'by all the parties thereto,' or 'by the parties thereto,' or some such general terms. *Mutuality of obligation is not essential to render a party liable upon a contract.* If there is a consideration for his undertaking, he is bound; and the fact that the contract may not be enforceable against one party, because not subscribed by him, is no defense to the other, by whom it is subscribed. Under both these sections it has long been well-settled that *an agreement signed by one party only is sufficient to charge him within the statute,* and therefore, upon a contract for the

sale of land or of goods, if the purchaser (seller) alone has signed the contract, he cannot refuse to execute the conveyance or to accept the goods upon the ground that the purchaser has not signed also. *And it is no objection that the party signing can enforce the contract while the other cannot*; for, if it is said that unless the plaintiff also signs there is a want of mutuality, the answer is that the defendant might have required the plaintiff's signature to the contract; or that, if he has not done so, it is his own fault; the object of the statute was to secure the defendant's. The party signing may, it appears, require the other to accept or refuse the contract in writing, and if this is not done may himself rescind it, at least before the other has done some act to bind himself." And so in this case, when Langer sent the written order to his principal, the defendant, without the signature thereto of the purchaser, and defendant wrote plaintiffs the letter of January 20, 1909, above set out, it waived the printed requirements in the memorandum that "all orders must be signed by purchaser." The text above quoted from Wood on Frauds is fully sustained in note 2, page 698, 28 L. R. A. n. s.; and in *Morrison v. Browne,* 191 Mass. 65; *Nebraska Bridge Supply & Lumber Co. v. Conway & Sons,* 127 Ia. 237; *Williams v. Robinson,* 73 Me. 186; *Greeley-Burnham Grocer Co. v. Capen,* 23 Mo. App. 301; and numerous other authorities cited in 28 L. R. A. n. s. *supra.*

2. We are unable to discover from the petition any conditions to the contract prescribed by defendant to be performed by the plaintiffs, as conditions precedent to the creation of a contract obligating defendant. The statement in the letter of January 20, 1909, from defendant to plaintiffs that "we await shipping instructions from you for our next car and hope you will be able to give them to us soon," did not constitute a condition precedent to a liability under the contract, especially so under the allegation in the petition that plaintiffs requested defendant to ship the flour, both orally at the time of giving the order and at times in February, which was the month in which the memorandum provided the shipment should be made.

3. We cannot agree with counsel that defendant "never contracted absolutely, but upon the condition that the contract was, by the plaintiffs' acts, to be rendered mutually enforceable between the parties." There is nothing in the petition, which is all we are considering, to justify this contention.

4. While it is true that when a condition is attached to the making of a proposed contract that both the parties shall sign the same, and one party neglects or refuses to sign, the party signing is not bound by the contract; yet, if the party not signing has merely neglected to do so, and after the other party has discovered the neglect he writes to the party not signing, ratifying the contract as made, and declaring his intention to proceed under it, he thereby waives the failure by the other party to sign.

5. Conceding defendant's contention, that a petition tested by demurrer must be construed most strongly against the pleader, does not aid it in this action, as we think the petition, so tested, states a cause of action, and that the district court erred in sustaining the general demurrer thereto.

REVERSED AND REMANDED.

REESE, C. J., and ROSE, J., not sitting.