[No. 14219. Department One. May 6, 1918.]

# NUT HOUSE, *Respondent,* v. PACIFIC OIL MILLS, *Appellant.*[1]

FRAUDS, STATUTE OF—SALE OF GOODS—MEMORANDUM—SUFFICIENCY. A memorandum of an order for the sale of goods describing the thing sold, the names of the parties, price and terms of payment, signed by the party charged, meets the requirements of the statute of frauds, though informal and containing abbreviations which it is necessary to explain by oral evidence.

JUDGMENT—BAR—MATTERS CONCLUDED—SET-OFF. Judgment in an action by assignees, in which the defendant pleaded, but could not recover, an offset it had against the assignor over and above the amount of the assigned claim, is not a bar to an action by the former defendants against the assignor for the balance due over and above the offset allowed in the former action.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 28, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Halverstadt & Clarke* and *Piles & Halverstadt,* for appellant.

*Hastings & Stedman* and *Ewing D. Colvin,* for respondent.

MAIN, J.—The purpose of this action was to recover the balance due as commissions on account of the sale of a large quantity of peanuts. The trial resulted in a verdict in favor of the plaintiff in the sum of $3,924.11. A motion for judgment notwithstanding the verdict and, in the alternative, for a new trial being interposed and overruled, judgment was entered upon the verdict. From this judgment, the defendant appeals.

The appellant, the Pacific Oil Mills, was a corporation engaged in the importation and wholesale of nuts

[1]Reported in 172 Pac. 841.

in the city of Seattle. The respondent, the Nut House, a corporation, was engaged in the nut business in Seattle, but on a somewhat smaller scale than the appellant. While the respondent was the smaller of the two concerns, it apparently had superior selling facilities or advantages of which the appellant desired to avail itself. Early in January, 1914, the appellant contracted with the respondent that the latter should send a representative to certain eastern cities for the purpose of selling peanuts. For this service respondent was to receive a commission. After this agreement was made, A. L. Delkin, the secretary of the respondent company, visited Chicago and New York, and in each of these cities took orders. One order was for twenty car loads of nuts. The facts concerning these transactions will be found more fully stated in *Carstens v. Nut House*, 96 Wash. 50, 164 Pac. 770.

At the time the commission contract above mentioned was made, the respondent was owing the appellant for nuts which it had purchased from that company the sum of $4,015.89. After the sales had been made in Chicago and New York, a dispute arose between the two companies as to the commissions which the respondent claimed to have earned. The appellant assigned the amount which was owing it by the respondent to Thomas Carstens and Herman Meyer. The assignees thereupon brought suit against the Nut House for the amount of the indebtedness assigned to them. In this action the Nut House pleaded as an offset the commissions which it claimed to have earned by reason of the orders which its representative had taken in Chicago and New York. That case was tried to a jury, and resulted in a verdict sustaining the defense of the Nut House and denying a recovery to the plaintiffs in the action. After the judgment was entered upon the verdict, the plaintiffs appealed and the judgment was

affirmed. The present action was instituted to recover the commissions due over and above the amounts which were offset as a defense in the case in which Carstens and Meyer were plaintiffs and the Nut House the defendant. This case was also tried to a jury, as above stated, and resulted in a verdict and judgment sustaining the right to recover the balance of the commissions claimed to be due. In the present case only two questions appear which were not determined in the former case.

The first question is whether the orders taken in Chicago and New York were sufficient in form and substance to constitute a binding memorandum under the statute of frauds. The statute, of course (Rem. Code, § 5290), among other things, provides that:

"No contract for the sale of any goods, wares, or merchandise, for the price of fifty dollars or more, shall be good and valid, . . . unless some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The appellant claims that the orders taken—five in number—do not meet the requirements of this statute. While the orders are not formal contracts, the statute does not require that they should be. It is true that the orders, or some of them, are somewhat informal, but each of them contains the essential elements to satisfy the statute. The thing sold is described by words or abbreviations or by reference to sample. The price to be paid is mentioned and the terms of payment, also the party selling and the party purchasing, and each order is signed by the party to be charged. It is true that in one or more of the orders taken there were abbreviations the meaning of which it was necessary to explain upon the trial by oral testimony, but this was not proving an essential term of the contract not cov-

ered by the writing. No authority has been called to our attention which holds that, where it is necessary to explain an abbreviation by oral testimony, the contract necessarily fails to meet the requirements of the statute. We think the orders substantially complied with the requirements of the statute. The substantial effect of a holding that these orders were void would be to require that a contract to satisfy the statute should be a formal one. This would be not only a serious interference with the facility with which ordinary business transactions may be conducted, but would be extending the statute beyond its scope and meaning.

The other question is: Can the respondent maintain this action after having pleaded in the action of Carstens and Meyer against the Nut House the same contracts and the commissions flowing therefrom as an offset? In that action, the plaintiffs being assignees, the defendant was not entitled to an affirmative judgment against them over and above their claim. Had that action been brought by the Pacific Oil Mills, the present appellant, it is doubtless true that the defendant there would have been required to sustain its entire claim or be barred from maintaining another action. The Pacific Oil Mills, by assigning its claim against the Nut House to Carstens and Meyer, put it out of the power of the respondent to get any affirmative relief in that action. The rule supported by the authorities is stated in 34 Cyc. 762 as follows:

"In an action by an assignee a claim against the assignor can be allowed as a set-off, counter-claim, or reconvention, only to the extent of the claim sued upon, and judgment cannot be rendered against the assignee for the excess."

The respondent, having no right in the previous action to recover an affirmative judgment against the

assignees, is not by the law denied the right to maintain a subsequent action against the appellant for the balance due over and above the amount allowed as a set-off.

The judgment will be affirmed.

ELLIS, C. J., WEBSTER, and PARKER, JJ., concur.