[No. 14677.  *En Banc.*  January 21, 1919.]

CHAUNCEY WRIGHT, *Respondent,* v. SEATTLE GROCERY COMPANY, *Appellant.*[1]

FRAUDS, STATUTE OF (37)—SALE OF GOODS—MEMORANDUM—SUFFICIENCY. A memorandum showing the date, name and address of the purchaser and the statement of goods sold with the agreed price, is a sufficient compliance with the statute of frauds, although all the details are not stated and the complaint alleges an agreement partly oral and partly written.

APPEAL (389)—REVIEW—AMENDMENTS. Under Rem. Code, § 1752, requiring disregard of technicalities and amendments considered as made, defects in a complaint capable of amendment are not material when the cause was tried as if upon a sufficient complaint.

FRAUDS, STATUTE OF (38)—SALE OF GOODS—MEMORANDUM—SIGNATURE. Rem. Code, § 5290, requiring a note or memorandum of a sale of goods exceeding fifty dollars to be "signed by the party to be charged thereby" is satisfied where it is signed by and may be enforced against the seller, although not signed by the purchaser.

SAME (38)—SALE OF GOODS. The use, by the seller of flour, of a blank form, with its name printed at the top, filled out by its authorized agent showing the terms of the contract of sale, is a sufficient "signing" of the contract by the seller to satisfy the statute of frauds.

SAME (37) — SALE OF GOODS — MEMORANDUM — SUFFICIENCY. A memorandum of a sale of flour setting forth the purchaser and seller, the quantity and character of the goods, the price therefor and the date of sale, shows a complete contract and satisfies the statute of frauds, although time and place of delivery were not given.

SALES (34, 35)—DELIVERY—TIME AND PLACE. Where the time and place of delivery of goods sold are not specified there is a presumption of a reasonable time; and both parties doing business in the same city, a like presumption fixes that point as the place of delivery.

EVIDENCE (175)—PAROL EVIDENCE TO VARY WRITING—AMBIGUITY. Parol evidence explaining what was meant by "1 car" of flour, and showing amount contained in a car shipped at the time and the manner of shipment, does not alter or add to the written memorandum of sale answering the requirements of the statute of frauds.

[1]Reported in 177 Pac. 818.

SALES (154-156) — ACTION FOR BREACH — DAMAGES. In an action for failure to deliver flour sold, where there was no dispute as to the market value of the brand sold, the question of market value should have been withdrawn, and the jury instructed to assess damages in a sum equal to the difference between the contract price and the market value.

PRINCIPAL AND AGENT (34) — SALES AGENT — AUTHORITY. The authority of an agent to make a sale of flour is sufficiently shown by evidence that he had been a salesman for the principal for six years, actively engaged in soliciting orders and making such sales, his authority never having been questioned before.

SAME (51)—AGENT'S RIGHT TO SUE. An agent acting individually in buying flour and making the contract, may sue thereon in his own name as the real party in interest.

MACKINTOSH, HOLCOMB, MAIN, and TOLMAN, JJ., dissent.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 3, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Elias A. Wright* and *Sam A. Wright,* for appellant.

*Leopold M. Stern* and *J. W. Russell,* for respondent.

FULLERTON, J.—The sales agent of the appellant sold to the respondent a car-load of flour, and delivered to him a copy of a memorandum of the sale in the following form:

"Seattle Grocery Company (Incorporated.)
"Corner Western Avenue and Columbia Street.
"Phone Main 842.
"Seattle, Wash., April 6, 1917.
"Sold to Chauncey Wright,
"L. C. Smith Bldg., Seattle, Wash.
Coffee, Spices, 'Halcyon' Food Products,
1 Car Gold Medal Flour...........$2,790.46."

The memorandum of the sale was a printed blank form, on which was entered in writing, at the time of sale, the date, name and address of purchaser, and the statement of goods sold, with the agreed price. The

appellant corporation failed to carry out the contract, and the respondent brought an action for its breach,· demanding damages in the sum of $1,859.54, being the difference between the agreed price and the sum of $4,650, which was alleged to be the market value of the flour in Seattle, the place of delivery, at the time of the breach. On a trial before a jury a verdict was returned against the appellant in the sum of $1,472.04, and from the judgment entered thereon, this appeal is prosecuted.

The record discloses the death of the respondent pending the appeal and the substitution of the executrix in his place and stead.

The first assignment of error necessary to be noticed is the assignment that the court erred in overruling the demurrer interposed to the complaint. In his complaint the respondent alleged that the contract of sale was "partly oral and partly written," and it is contended that this is fatal to the complaint, since, under the statute of frauds, the contract must be in writing, and that a contract partly oral and partly written is in law an oral contract. But we cannot think the objection tenable. In the first place, the contention misconceives the effect of the statute. The requirement is not that contracts of this sort must be in writing, but is that some note or memorandum in writing of the bargain be made and signed by the party to be charged. If, therefore, the note or memorandum shows the bargain, it is sufficient, even though all of the details of the agreement be not stated therein. But further than this, the defect, if defect it is, is one capable of amendment. The cause was tried as if upon a sufficient complaint, in which neither party was denied the right to introduce evidence because of the supposed defect. It would therefore be an idle ceremony to reverse the

cause and send it back for a new trial because of this defect in the complaint, even though we considered the objection well taken, since to do so would be but to allow an amendment to the complaint and a retrial upon the same evidence. Moreover, to do so would be to disregard that admonition of the statute requiring us to hear causes upon their merits, disregarding all technicalities, and to consider all amendments as made which could have been made. Rem. Code, § 1752.

The principal contention of the appellant is that the memorandum was not sufficient under our statute of frauds. The applicable provision of the statute is as follows:

"No contract for the sale of any goods, wares, or merchandise, for the price of fifty dollars or more, shall be good and valid, . . . unless some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." Rem. Code, § 5290.

The real contract between the parties was an oral one, evidenced by the memorandum which we have set out. This memorandum was not signed by the respondent, and under the statute, according to the unquestioned holding of the authorities, the contract was unenforcible against the respondent. The appellant seizes upon this fact as a basis for arguing the lack of mutuality in the contract, and contends that, if it is unenforcible by the appellant, it must likewise be unenforcible by the respondent. While there is a conflict in the decisions of the courts upon this point, it is settled by the great weight of authority that a written memorandum of a sale of goods is sufficient as against the defendant in a suit, though it be signed by him alone. This seems to be rested on the theory that the statute is in the nature of a rule of evidence, neces-

sitating written in place of parol proof. Under other provisions of the statute, the contract would be enforcible in the absence of any writing, if it had been partially performed by either party or anything done to bind the bargain. The term in the statute, "the party to be charged," is construed by the courts as being used with reference to the contracting party whom it is sought to hold liable in the courts, and as authorizing action by a purchaser who did not sign, against a seller who did sign the memorandum. *Knapp v. Beach,* 52 Ind. App. 573, 101 N. E. 37; *Justice v. Lang,* 42 N. Y. 493, 1 Am. Rep. 576; *Morrison v. Browne,* 191 Mass. 65, 77 N. E. 527; *Bowers v. Whitney,* 88 Minn. 168, 92 N. W. 540; *Linton & Co. v. Williams,* 25 Ga. 391; *Williams v. Robinson,* 73 Me. 186, 40 Am. Rep. 352.

While this court has not heretofore had occasion to pass expressly upon the point in connection with the sale of goods, it has declared in the case of *Western Timber Co. v. Kalama River Lum. Co.,* 42 Wash. 620, 85 Pac. 338, 6 L. R. A. (N. S.) 397, 114 Am. St. 137, that a memorandum of sale of lands could be specifically enforced though not signed by the purchaser, the terms of sale signed by the seller being sufficient to take it out of the statute of frauds. To the same effect is *Tingley v. Bellingham Bay Boom Co.,* 5 Wash. 644, 32 Pac. 737, 33 Pac. 1055, and *Anderson v. Wallace Lumber & Mfg. Co.,* 30 Wash. 147, 70 Pac. 247.

A further contention of the appellant is that there was no memorandum of sale signed by itself upon which it could be charged. It is true no actual written signature to the memorandum was made by the appellant or by its authorized agent, but the record shows that its authorized agent negotiated the sale with respondent, and entered the terms of the sale on a blank form used by appellant in dealing with custo-

mers, which contained at its top the name of the appellant as the acting party. We held in *Anderson v. Wallace Lumber & Mfg. Co.,* and *Tingley v. Bellingham Bay Boom Co., supra,* that a contract may be signed within the meaning of the statute, no matter in what part thereof the name of the party to be charged may appear. Under these authorities, the use by the party to be charged of his written or stamped name to indicate his joinder in the contract set forth is a sufficient signature under the statute of frauds. See, also, *Dinuba Farmers' Union Packing Co. v. Anderson Grocery Co.,* 193 Mo. App. 236, 182 S. W. 1036; *Berryman v. Childs,* 98 Neb. 450, 153 N. W. 486, Ann. Cas. 1918 B 1029; *Drury v. Young,* 58 Md. 546, 42 Am. Rep. 343.

The appellant also contends that the bill of sale does not set forth all the terms of the bargain made, but that respondent was compelled to resort to parol evidence to establish them, and hence the memorandum was not sufficient under the statute. This court has lately had this question under consideration in the case of *Nut House v. Pacific Oil Mills,* 102 Wash. 114, 172 Pac. 841.

"The appellant claims that the orders taken—five in number—do not meet the requirements of this statute. While the orders are not formal contracts, the statute does not require that they should be. It is true that the orders, or some of them, are somewhat informal, but each of them contains the essential elements to satisfy the statute. The thing sold is described by words or abbreviations or by reference to sample. The price to be paid is mentioned and the terms of payment, also the party selling and the party purchasing, and each order is signed by the party to be charged. It is true that in one or more of the orders taken there were abbreviations the meaning of which it was necessary to explain upon the trial by oral testimony, but

this was not proving an essential term of the contract not covered by the writing. No authority has been called to our attention which holds that, where it is necessary to explain an abbreviation by oral testimony, the contract necessarily fails to meet the requirements of the statute. We think the orders substantially complied with the requirements of the statute. The substantial effect of a holding that these orders were void would be to require that a contract to satisfy the statute should be a formal one. This would be not only a serious interference with the facility with which ordinary business transactions may be conducted, but would be extending the statute beyond its scope and meaning.''

In the instant case, the writing showed the seller and purchaser, the quantity of goods sold, the price of the goods, and the date of the contract. It was shown by oral testimony that the ''car'' of flour comprised 310 barrels, packed in sacks of different capacities; that the smaller sacks were to be exchanged for larger; that delivery was to be made on the arrival of the car at Seattle from Minneapolis, at which time respondent was to pay for the flour; that the freight, amounting to about $350, was to be paid by the appellant; and that the appellant was to receive, in addition to the price specified on the invoice, two per cent thereof. It is a matter for notice in this connection that the sum of $2,790.46 is itself substantially the result of the addition of $2,735.75, the miller's price of the car to the appellant, and $55.71, the product of two per cent on that price. It is thus seen that the written memorandum of itself was sufficient to show a complete contract enforcible against the appellant, inasmuch as it set forth the purchaser and seller, the quantity and character of the goods, the price therefor, and the date of the contract. Time and place of delivery were not specified, but in such case a reasonable

time is to be presumed, and as both parties were engaged in business in Seattle, a like presumption would fix that point as the place of delivery. Parol evidence was admissible to explain the quantity understood by the parties to be comprised in a car-load. After proof of the amount of damages for nondelivery, the respondent might have rested, but he went farther. He tendered proof that the car of flour had been purchased in Minneapolis, had been shipped at the time of the contract, and was to be delivered in Seattle about April 25, 1917. He pleaded and proved that a car-load of flour consisted of 310 barrels. This seems to be based on the custom of the trade that a car-load usually contains that quantity, but there was no pleading as to such custom. He introduced in evidence the shipment invoice of this particular car, which showed a content of 297 barrels, made up of 284 sacks of 98 pounds, 600 sacks of 49 pounds, and 40 sacks of 24½ pounds. The car also contained an assortment of burlap and empty sacks of the value of $143.90, and a quantity of advertising matter for the use of the appellant, which, of course, were not intended to be included in the purchase of the car-load. Out of excess of caution, the respondent proved that the freight was to be paid by the appellant, but the invoice discloses that the freight was deducted from the price at which the car-load was billed to the appellant. The respondent proved, also, that he was not to take the flour in the sizes in which it was packed for this shipment, but that the smaller sacks were to be exchanged for larger, not establishing, however, whether this agreement was meant to cover both the 600 sacks of 49 pounds and the 40 sacks of 24½ pounds, or only to apply to the smaller allotment.

We do not think that any of this evidence which was material was effective to alter or add to the contract

shown by the written bill-head. It went no further than to show to what particular car the memorandum was addressed, to show the quantity comprised in that car-load lot, and to show that the car contracted for contained 297 instead of the customary 310 barrels. All the essentials of the sale of goods binding on the seller were contained in the writing, and the only tendency of the parol evidence was to explain what the term "1 car" of flour meant and that the price agreed upon was in full for that quantity. We find no prejudicial error in the admission of any of the oral testimony complained of.

The appellant complains of the action of the court in submitting to the jury the question of the amount of damages suffered by the respondent, and in this we think the court erred. The record shows that, on April 26, 1917, the date of the breach of the contract to deliver the flour, the brand in question was selling in Seattle at $12.50 per barrel. The appellant had the exclusive agency for the Washburne-Crosby Gold Medal flour, and fixed the selling price within his territory. The president of the appellant corporation testified that, on that date, the price was $12.50, and the record, in fact, shows that 100 barrels were tendered to the respondent at that price. There was no contradictory evidence of any other price prevailing at the time for Gold Medal flour. The only evidence addressed to selling price was that of experts to the effect that other flour of similar quality was selling at that time for $14.70 per barrel. This could in no sense refute the evidence that the price of Gold Medal flour was a less sum. There was, it is true, evidence of a sale of this flour made by appellant at $15 per barrel, but this was four months later and flour had been advancing in the meantime. Under the evidence, the

court should have withdrawn from the jury the question of finding the market value, and instructed them, if they found for the respondent, to assess his damages in a sum equal to the difference between the contract price of the flour and $12.50 per barrel.

Respecting the authority of the salesman to bind appellant, we think there was sufficient evidence for the jury to find that he was acting for his principal. He had been a salesman for the appellant for some six years, actively engaged in soliciting orders, and had acted in that capacity on various occasions in making sales of goods to the respondent, employing in such sales the same kind of bill-heads as the one in controversy here. His authority in such sales had never been questioned by the appellant prior to this transaction.

The contention of the appellant, that it was denied the right of examining the respondent so as to show that he was not the real party in interest but was acting for certain corporations, is without merit. The contract was made with the respondent individually, and not in any representative capacity; hence he had a right to enforce it, his purpose as to disposition of the goods being immaterial to the appellant.

For the error noticed, there must be a reversal. However, a new trial is not required. The plaintiff was entitled to recover at a market price of $12.50 per barrel. The judgment is reversed, and the cause remanded with instructions to enter a judgment on the basis indicated.

CHADWICK, C. J., MOUNT, MITCHELL, and PARKER, JJ., concur.

TOLMAN, J., dissents.

MACKINTOSH, J. (dissenting)—As I read the record in this case it discloses an effort on the part of appel-

lant to fix his own measure of damages which are to be recovered against him for his breach of contract to deliver a carload of flour. When inquiry was made of him in regard to delivery, the appellant refused to deliver according to the terms of the contract, but notified the respondent that he could have some of the flour contracted for at the price of $12.50 per barrel. The majority opinion fixes the measure of the respondent's recovery at the difference between the contract price and this $12.50 per barrel. One who has breached his contract to deliver at a certain price cannot limit the recovery against him for such breach by offering, at the time of the breach, to deliver the identical goods contracted for at some other price higher than that stipulated in the contract but less than the market price. He cannot accomplish this even though the rule is enforced against the other party to the contract that he must do all in his power to minimize his damages. Under that rule he is not compelled to accept from the party who has breached his contract the very goods agreed to be delivered at an increased price. The majority opinion accomplishes this result, but seems to attempt to place it upon the ground that $12.50 was the market price, the appellant being the only representative handling the brand of flour contracted for. The rule is in such cases: if there is in the market a commodity of the same quality as that contracted for, even though of another brand, that the measure of recovery will be the difference between the market price of the commodity contracted for, or commodities of similar quality, and the contract price. *Dean v. Van Nostrand,* 101 N. Y. 621, 4 N. E. 134. In other words, that it does not lie in the power of the contract violator, by reason of the fact that he is the only one in his community handling the brand of commodity

mentioned in the contract, to establish the market value of that commodity for the purpose of reducing his liability. The evidence discloses that flour of similar quality was worth $14.70 per barrel in the market at the time the appellant offered to sell at $12.50, which price he testified was the market price on that date. The court properly instructed the jury as to the measure of damages, and the verdict based upon those instructions should not be disturbed; in other words, no premium should be awarded to the appellant for having breached his contract.

I therefore dissent from the conclusion of the majority on this point.

HOLCOMB and MAIN, JJ., concur with MACKINTOSH, J.