[No. 25019. Department One. June 30, 1934.]

CHARLES E. GATKE, *Respondent*, v. WILLIAM C. McDUFFIE, *as Ancillary Receiver, Appellant.*[1]

*Bogle, Bogle & Gates* and *Warren Brown, Jr.*, for appellant.

*MacMahon & Poe*, for respondent.

MITCHELL, J.—This action was brought by Charles E. Gatke against William C. McDuffie, ancillary receiver of the Richfield Oil Company of California, and against one of his salesmen, for a breach of contract to sell and deliver one hundred sixty barrels, 8,480 gallons, of motor oil. The answer was a general denial of the allegations in the complaint. Trial resulted in a verdict for the plaintiff against the receiver. The receiver has appealed from a judgment on the verdict.

[1]Reported in 34 P. (2d) 348.

Certain assignments and arguments raise the question of the sufficiency of the evidence to take the case to the jury; first, as to the question of whether there was a contract and its terms, and second, as to the question of damages.

The respondent claims to have purchased oil for his trade in the vicinity of Tacoma, where he had been handling a brand of oil known as "Richlube" which he had always procured from the Richfield Oil Company. The only description given of the goods in the writing between the parties was: "30 bbl. S. A. E. 30 Penn Motor oil 38; 110 bbl. S. A. E. 40 Penn Motor 38; 20 bbl. S. A. E. 50 Penn Motor 40." That is, 140 barrels at 38 cents a gallon and 20 barrels at 40 cents a gallon.

His contention, supported by substantial evidence, was, in effect, that the contract was entered into September 14, 1931, for delivery November 1, 1931; that he was to get "Richlube" motor oil, consisting of one hundred per cent Penn oil, and that the contract was broken by the appellant. The contention of the appellant was, in effect, that a contract was proposed, but not entered into, between the parties, and that, in the negotiations between them, the quality of motor oil under consideration was a "secondary, unbranded Penn motor oil." The conflict in the evidence as to whether there was a contract and the terms of it presented questions for the jury, which were decided in favor of the respondent.

Upon the question of the amount of damages, the proof on behalf of the respondent was to the effect that, about the date of the promised delivery, November 1, 1931, the kind of oil covered by the contract was selling for approximately seventy-one cents per gallon in the vicinity of Tacoma, and could not be had except

from the Richfield Oil Company, who at that time, as already stated, repudiated its contract.

One witness, who worked for the Richfield Oil Company as distributor of its products in and around Tacoma in the fore part of the year 1931, testified:

"On or about the first day of November, 1931, I do not know whether Richfield Oil Company sold any other Penn motor oil other than Richlube. To my knowledge the Richfield Oil Company have not sold motor oils other than Richlube. Richlube was the only Penn motor oil the Richfield Oil Company sold in Tacoma and vicinity during that period. I have never heard of any other Penn motor oil sold by the Richfield Oil Company, other than Richlube."

Another witness testified that he was a jobber and dealer in gasoline and oils, and worked in Tacoma for the Richfield Oil Company until November, 1930, after which date he worked with Mr. Gatke for awhile and at other times sold oils in a business of his own in Tacoma, jobbing and selling different kinds of motor oils. He testified that he was engaged in business in Tacoma in November, 1931, working for another as a jobber in the gasoline and oil business, and that he kept in touch with the price and quality of oils handled in the Tacoma territory. He further testified that:

"The terms 'S. A. E. 40' and 'S. A. E. 50' was put on to show the weight. The Richfield Oil Company did not sell any other motor oil than Richlube which was Penn motor oil 'S. A. E. 30, S. A. E. 40 and S. A. E. 50.' On the first of November, 1931, Penn motor oil was sold by the Richfield Oil Company in Tacoma for around 65 to 70 cents. At the time I was distributor and jobber the Feek Company was the only jobber selling Richfield motor oils in the City of Tacoma and vicinity. To my knowledge there was no other. I would say it would not be possible for a person to buy Penn motor oil 'S. A. E. 30, S. A. E. 40 and S. A. E. 50' sold by the Richfield Oil Company in the City of Tacoma and vicinity on the first of November, 1931

from any other source than the Richfield Oil Company.''

He further testified that the sales he referred to were ''service station sales in ten and twenty gallons up to barrel lots.''

S. G. Ainsworth testified that, in September, October and November, 1931, he was manager of the lubricating department, northern division, of the Richfield Oil Company, with headquarters in Seattle. He admitted on the witness stand the refusal on the part of the company to deliver any oil to the respondent under the contract, or at all. He testified further that, during the three months mentioned, branded Richlube motor oil sold for sixty-five to seventy cents a gallon; that there were two kinds of motor oil, branded and unbranded, that were sold in the territory at the time in question, and that the motor oil described in the written contract was the unbranded kind, the market value of which was thirty-six to forty-one cents per gallon in the Tacoma territory at that time.

Thus the appellant claims, and introduced evidence tending to prove, that it handled two grades of the oil in the Tacoma territory at the time in question, one of which sold for sixty-five to seventy cents a gallon. On the contrary, the respondent claims, and introduced evidence tending to prove, that, at that time, the appellant did not sell any motor oil other than the kind or grade mentioned in the contract, and that it ''was sold by the Richfield Oil Company in Tacoma for around 65 to 70 cents.''

The verdict for $1,424.60 is well within the evidence of twenty-four cents per gallon difference between forty cents per gallon, the highest price mentioned in the contract, and sixty-five cents per gallon, the lowest market price at the date of the breach of the contract,

for the 8,480 gallons involved in the contract. The decision of the question of fact or credibility of the witnesses was for the jury.

 Appellant assigns as error the giving of an instruction, as follows:

"If you find from the evidence and under these instructions that the defendant McDuffie, by and through the agency of the defendant Sutliffe, agreed to sell to plaintiff and plaintiff agreed to buy from him
 "30 barrells S. A. E. 30 Pen Motor Oil and
 "110 " " " " 40 " " "
 "at 38 cents per gallon, and
 "20 barrels S. A. E. 50 Pen Motor Oil
 "at 40 cents per gallon.
and to deliver same at Tacoma, Washington, on November 1, 1931, and if you further find from the evidence that the plaintiff intended to sell Pennsylvania Motor Oil of the same quarilty and grade as that being sold at that time in this territory by the defendants under the trade name or brand of 'Richlube' and if you further find that the defendant McDuffie refused to deliver such oil at all and breached such contract, then I charge you as a matter of law, that plaintiff is entitled to a verdict at your hands for the difference between the price that plaintiff agreed to pay therefor and the market price of such oil at Tacoma, Washington, on November 1, 1931."

The argument is that the instruction erroneously measures the damages on the difference between the contract price and the price of Pennsylvania oil of *the same quality and grade* as "Richlube." Manifestly, the instruction was given on behalf of the respondent in accordance with his theory of the case, and upon which his evidence was introduced, the jury being judges of the facts with reference thereto.

The case of *Wright v. Seattle Grocery Co.*, 105 Wash. 383, 177 Pac. 818, cited by appellant, is not applicable to the present case. In that case, there was no dispute as to the brand or market value of the goods sold.

Here, those questions were in controversy upon which there was a conflict in the evidence, and the instruction, therefore, was proper.

Affirmed.

MILLARD, MAIN, STEINERT, and HOLCOMB, JJ., concur.