[No. 13677. Department Two. April 30, 1917.]

THOMAS CARSTENS *et al.*, *Appellants*, v. NUT HOUSE, *Respondent*.[1]

BROKERS — COMMISSIONS—ACTIONS — FAILURE OF PROOF. Failure of proof to support a broker's claims for commissions cannot be predicated upon the fact that the sales were made in the broker's own name, where there was a special reason therefor and the principal knew that the sales were being so made.

SAME — COMMISSIONS — ACTIONS — DEFENSES — EVIDENCE. Where brokers made sales in good faith in compliance with their contract, and the principal failed to consummate the sale for reasons wholly apart from the financial ability of the purchasers, the brokers are not called upon to prove the financial ability on the part of the purchasers.

EVIDENCE — TO VARY WRITTEN CONTRACT — EXPLAINING TRADE TERM. Where a broker's sales contract refers to the quantity as so many "cars," it is competent to prove that cars of merchandise of that character means to the trade approximately 30,000 pounds.

PLEADING — BILL OF PARTICULARS — DEFECTS — ADMISSIBILITY OF EVIDENCE. Where a bill of particulars fully informed counsel of every fact, although it was defective and the account rendered was not as full as demanded, it is not error to admit evidence of the account, in the absence of any request for a further account, under Rem. Code, § 284, providing that items of account not stated in the bill shall be excluded and that in case the account is defective the court may order a further account.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 22, 1915, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Affirmed.

[1]Reported in 164 Pac. 770.

*Halverstadt & Clarke* and *Piles & Halverstadt*, for appellants.

*Ewing D. Colvin* and *Hastings & Stedman*, for respondent.

PARKER, J.—The plaintiffs, Thomas Carstens and Herman Meyer, copartners doing business under the firm name of Pacific Oil Mills, and successors in interest, by assignment, of Pacific Oil Mills, a corporation, commenced this action in the superior court for King county seeking recovery of $4,015, claimed as the purchase price of peanuts sold by that corporation to the defendant, The Nut House, a corporation, during the months of November and December, 1913, and the month of January, 1914. It is conceded by defendant that peanuts of that total value were so sold to it and that the claim therefor was assigned to the plaintiffs by the Pacific Oil Mills, a corporation, before the commencement of this action. The defendant alleges that, before such assignment was made, it earned the sum of $7,940 as commissions in selling peanuts for Pacific Oil Mills in Chicago and New York in pursuance of a commission contract entered into between it and that corporation, which earned commissions the defendant alleges are unpaid, and seeks to offset the same against the claim of the plaintiffs here sued upon. So the real controversy was, and here is, over the commission claim of the defendant. The trial in the superior court sitting with a jury resulted in a verdict in favor of the defendant to the effect that it is entitled to have its commission claim offset against the claim of the plaintiffs, and that such commission claim exceeds the claim of the plaintiffs. Judgment was accordingly entered that plaintiffs recover nothing, and that the defendant recover from the plaintiffs its costs and disbursements incurred in this action. From this judgment, the plaintiffs have appealed to this court.

Pacific Oil Mills was a corporation engaged in the importation and wholesale of nuts in the city of Seattle at all times here in question prior to the assignment of its claim against

respondents to appellants, who thereafter did business as co-partners under the same name. Respondent was, at all times here involved, engaged in the nut business in Seattle, but on a much smaller scale than that of appellants and their predecessor, Pacific Oil Mills. While respondent was much the smaller concern of the two, it apparently had superior selling facilities and advantages of which Pacific Oil Mills desired to avail itself.

The principal contentions here made by appellants have to do with the sufficiency of the evidence to sustain the verdict and judgment, which questions were presented to the trial court by motions timely made therein. It is insisted in that behalf that there was not sufficient proof of the making of the commission contract between respondent and Pacific Oil Mills. The fact of the making and also the terms of that contract seem to us to be rendered quite certain by the testimony of the respondent's president, if he is to be believed, the furnishing of samples by Pacific Oil Mills to respondent, and certain correspondence introduced in evidence. The contract so appearing contemplated the sale of peanuts by respondent for the Pacific Oil Mills in eastern cities, and that respondent should have, as its compensation for making such sales, an amount equal to the excess over six cents per pound. It seems quite clear to us that the evidence fully warrants the conclusion, as evidently reached by the jury, that this contract was actually entered into and that its terms were as we have indicated. We are of the opinion that there was no failure of proof so far as this branch of the case is concerned.

It is contended that there was a failure of proof of the making of sales under the commission contract by respondent. This contention seems to be rested largely upon the fact that the sales were made by respondent's representatives in its own name instead of the name of Pacific Oil Mills. The making of sales in this manner without disclosing the name of Pacific Oil Mills as principal was assented to by it upon being fully advised of the sales being so made. It actually made ship-

ments in accordance with some of these sales and received the whole of the proceeds therefrom, the shipments being made by Pacific Oil Mills in the name of respondent and remittances in payment thereof being immediately turned over to Pacific Oil Mills when received. There was evidence pointing to a special reason for the making of sales by respondent in this manner without disclosing to the purchasers the principal for whom it was acting, and that this manner of making the sales would have worked to the benefit of Pacific Oil Mills in increasing the quantity of sales had it furnished the goods as agreed upon by it in the commission contract. Not only did that corporation know of the reason for the sales being so made, but evinced a ready willingness to profit thereby in so far as it saw fit, or was able, to furnish the goods in consummation of the sales. The conclusion that respondent was in fact at all times acting for Pacific Oil Mills and not for itself is amply supported by the evidence. This, we think, renders it plain that the Pacific Oil Mills and also appellants, as its successors in interest, can neither avail themselves of the fact that the sales were made in respondent's name. We have had occasion to notice the law relating to contracts made by agents of undisclosed principals as being in harmony with this conclusion in our recent decision in *Pacific Power & Light Co. v. White, ante* p. 18, 164 Pac. 602. This is not a case involving ratification of a contract made by one who, at the time of its making, was not in fact acting for the one sought to be held upon the theory of ratification, as counsel for appellant seem to argue, citing 2 C. J. 474. In other words, we have here a case where there was an existing principal for whom the agent acted at the time of making the sales contracts, though such principal was not disclosed to the purchasers. We are of the opinion that there was no failure of proof of the fact that these sales contracts were the contracts of the Pacific Oil Mills, made by respondent as its agent.

It is contended that the proof fails to show that the purchasers to whom respondent claims to have made the sales were

willing and able to consummate the sales. That they were willing to consummate the sales seems to find ample support in the evidence. Indeed, we do not understand that it is seriously contended to the contrary. The principal contention in this behalf is that the financial ability of the alleged purchasers is not sufficiently proven. We may concede that, if it had been necessary in this case to make such proof, the evidence might be considered as in some measure deficient, but it is plain from the evidence as a whole that the Pacific Oil Mills approved the sales in so far as the financial ability of the purchasers to pay for the goods sold is concerned. The evidence is little short of conclusive that the failure of appellants to consummate the sales made in its behalf by respondent was not because of its belief in the financial inability of the purchasers. We have already noticed that it actually did consummate sales to one of these purchasers, and we note that, had it consummated the other sales made to that purchaser, they alone would have earned commissions for respondent of much greater amount than is necessary to offset appellants' claim against it. The evidence warrants the conclusion that the Pacific Oil Mills failed to consummate the sales made for it by respondent for reasons wholly apart from want of financial ability on the part of the purchasers and for reasons for which respondent was in no way responsible. The jury, we think, were fully warranted in concluding, as it evidently did, that respondent made the sales in good faith and in compliance with its commission contract with the Pacific Oil Mills, and thereby fully earned commissions at least equal to the amount of appellants' claim against it. We are of the opinion that the condition of the proof upon this branch of the case was such that respondent was not called upon to prove the financial responsibility of the purchasers. 4 R. C. L. 309.

It is further contended in appellants' behalf that the sales contracts procured for it by respondent are too indefinite as to quantity to support recovery of commissions by respondent, in any event except in so far as two of such sales

were consummated. The sale contracts in evidence refer to the quantity sold as so many "cars," manifestly meaning so many car loads. This is the manner of describing the quantity sold in each particular sale contract. Testimony was received showing that "car" or "car loads," with reference to merchandise of this character which is measurable by weight, means to the trade approximately 30,000 pounds. It was competent to so prove the meaning of the word "car" as used in the sale contracts and thereby render the sale contracts sufficiently certain as to quantity. 12 Cyc. 1085; *Bullock v. Finley*, 28 Fed. 514; *Indianapolis Cabinet Co. v. Herrman*, 7 Ind. App. 462, 34 N. E. 579. Manifestly, in the making of these sales, the quantity to be furnished under each particular contract did not call for very exact measurement until it became necessary to compute the exact total purchase price. For the latter purpose, of course, the quantity was contemplated to be determined with exactness, which could be done by determining the total exact weight when shipment would be made in pursuance of the sale contract, the price per pound being agreed upon. We are of the opinion that all questions of fact, the proof of which counsel for appellant challenged the sufficiency of, were properly left for determination by the jury, and that none of such questions could be properly determined by the court as questions of law.

It is contended by counsel for appellant that the trial court erred in admitting in evidence testimony to show the making of the sales in question because, prior to the trial of the case, they had demanded of counsel for respondent a bill of particulars, in response to which respondent furnished a bill of particulars, but somewhat defective, we may admit for argument's sake. Counsel invoke the provisions of Rem. Code, § 284. While that section seems to contemplate the exclusion of evidence of items of account when not stated in the complaint or in a bill of particulars when demanded, it also provides that, in case the account is defective, the court "may order a further account." Counsel for appellant did not ask

for any such order at any time prior to trial, though the statement of items was furnished five weeks before the trial, simply making their objections to the introduction of evidence upon the trial. While the account furnished was not as particular as demanded by counsel for appellants, it was an account which, read in connection with the information appearing in the pleadings on file, fully informed counsel for appellants of every fact demanded by them to be furnished. Under these circumstances, we are clearly of the opinion that the trial court did not err in overruling the objections to the introduction of the evidence upon this ground.

Finally, it is contended in appellants' behalf that the trial court erred in giving certain instructions and in refusing to give certain others requested by them. What we have already said disposes of some of the questions so raised. Otherwise, we think the rulings of the court upon the instructions were wholly without prejudice to the rights of appellants and do not call for further discussion here.

We are quite clear that appellant has had a fair trial free from prejudicial error. The judgment is affirmed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.