[No. 21446.   Department One.   February 14, 1929.]

HENRY BRODERICK, INCORPORATED, *Respondent*, v.
GEORGE B. BAKER, *Appellant.*[1]

[1]Reported in 274 Pac. 722.

*Benton Embree,* for appellant.

*Jay C. Allen* and *John F. Walthew,* for respondent.

BEALS, J.—Plaintiff, a real estate broker, sued defendant for $5,000, claiming that amount as due it for producing a tenant ready, able and willing to enter into a sublease of certain premises in the city of Seattle in accordance with terms outlined by defendant. The trial court rendered judgment in favor of plaintiff in accordance with the prayer of its complaint, from which judgment defendant appeals.

By reason of some agreement between appellant and Mr. and Mrs. Richardson, appellant's principals and the original lessees of the premises which it was contemplated should be sublet to the tenant to be produced by respondent, appellant assumed the burden of paying any commission which respondent might earn, and the liability of appellant for such commission, if any be found due, is not questioned.

The facts giving rise to this litigation are as follows: During the fall of 1927, negotiations between the parties to this action resulted in the writing, by L. S. Duryee, who was then in the employ of respondent, of a letter to appellant, the material portions of which, as alleged in the complaint and admitted by the answer, are as follows:

"November first, nineteen twenty-seven.
"Mr. George B. Baker,
Eitel Bldg.,
Seattle, Washington.
Dear Mr. Baker:
"Referring to the lease between Sarah E. A. Abt and William H. Richardson and wife covering the east-

erly one-half of lots 10 and 11, block 26, A. A. Denny's (less a portion taken for widening Second Avenue and Pike Street) we understand you offer us a lease upon said property for seventy-six years from November 1, 1927, at a net rental of $36,000 per year for first fifteen years and $37,000 per year for remaining 61 years payable quarterly in advance out of which the present lessees are to take care of the ground rental to be paid to the heirs of Sarah E. Abt to-wit: Jennie Hasbrouck, a widow; Mabel Epler, a maiden lady; and Albert E. Epler, a bachelor, as set forth in that certain extension of said lessees' lease upon above described property dated September 4, 1923, and recorded in Vol. 46 of Leases at page 3, upon the condition that all other obligations under said lease shall be taken care of by the new lessees and that to secure such obligation the new lessee shall deposit with said William H. Richardson and wife the sum of $30,000 upon which interest at the rate of 6% per annum shall be allowed to be credited proportionately upon the quarterly payments of rent. The conditions of said deposit shall be that it shall remain until and when the new lessee shall have erected a new building of fireproof construction in lieu of the present building and of a size of at least as great cubical content as the present building. After the erection of such building this deposit shall be returned by crediting upon the quarterly payments of rent the sum of $1,500 each quarter until said deposit shall have been returned. The new lease shall have protective clauses protecting the Lessor against the removal of the present improvements until a sufficient bond has been filed guaranteeing the construction without liens of the new building and any other clauses and conditions that may be usual and should be inserted. . . .

"We shall receive as our share of a commission the sum of $8,000 if we produce such a lessee able and willing to take such lease and deposit the said $30,000 security.

"Prior to our producing a lessee under conditions above set forth you shall have the privilege of making

a sale of your leasehold if at a price of $300,000 or more upon terms of at least one-half cash.

"Yours very truly,

"HENRY BRODERICK, INC."

"Dictated by Mr. Duryee."

To this letter appellant replied as follows:

"Henry Broderick, Inc.,                    November 7, 1927.
Hoge Building,
Seattle.
Gentlemen:

"Replying to your favor of the 1st inst. relative to the subleasing of the property now leased by W. H. Richardson from Sarah A. Abt, would advise that we would be interested in making a sublease for seventy-six years from November 1, 1927, to an approved lessee, for a net rental of Thirty-six Thousand Dollars per year for the first fifteen years and Thirty-seven Thousand Dollars per year for the remaining sixty-one years, the ground rental to be paid by the lessors named in sublease.

"On the above sublease there will be required a deposit of Thirty Thousand Dollars as a guarantee that all conditions of a sublease will be complied with, as outlined in your letter. When such a sublease is made and executed by all parties, the transaction completely closed and the Thirty Thousand Dollars paid to me, a commission of Five Thousand Dollars will be allowed.

"In my discussion with your Mr. Duryee, he figured the regular commission at $15,750 and that $8,000 would be the share you should receive but it seems there was an error in his figures making it $15,750.

"An acceptance accompanied by earnest money deposit in the sum of at least Ten Thousand Dollars must be made on or before November 15, 1927, otherwise all negotiations will be considered terminated and of no further effect.            Yours very truly,

"GEORGE B. BAKER."

"Form of sublease to be substantially like that made to Gardner J. Gwinn."

The lease referred to in this letter from appellant as having been made to Gardner J. Gwinn, was a lease

which had been negotiated in the year 1925 by respondent for appellant, with which lease Mr. Duryee was thoroughly familiar. In its complaint, after setting forth the letters above referred to, respondent alleged that it orally accepted the employment and endeavored to find a tenant who would enter into a sublease of the premises "pursuant to said terms and conditions;" that thereafter one George Bartell agreed with respondent that he, alone, or with some associates, would enter into a sublease of the property on the terms and conditions stated, and that thereupon respondent prepared an earnest money agreement (hereinafter referred to as the agreement), which, together with a check for $10,000, it endeavored to deliver to appellant on the afternoon of November 15, 1927. Respondent further alleged that appellant, for the purpose of cheating and defrauding respondent out of its commission, secreted himself during the afternoon of November 15 (that being the last day on which respondent, under appellant's letter, could produce a tenant and earn its commission), and that respondent was unable to find appellant on that day; that on the morning of November 16, respondent presented the agreement, together with a check for $10,000, to appellant, and that appellant refused to accept the same, stating, as his sole reason for his refusal, that the time limit fixed by him in his letter to respondent had expired. Respondent further alleged that thereafter appellant caused a sublease of said premises to be executed to George Bartell and his associates, that respondent had fully performed its contract with appellant and was entitled to receive the $5,000 commission mentioned in appellant's letter, above quoted.

Appellant admitted the writing of the letters pleaded, denied that respondent performed its contract within

the time limited thereby, or at all, and denied all liability to respondent.

The agreement prepared by respondent and submitted to appellant on November 16, consisting of a little over five pages of typed matter, is in evidence. This agreement recites that it is entered into between William H. Richardson and wife, "first party" (they being the original lessees of the premises and appellant's principals), appellant as second party, L. S. Duryee "as representing a corporation to be organized," third party, and respondent, referred to as the "Broker." Under this agreement, as prepared by respondent, the subtenant would be obligated to pay future assessments and taxes against the property, save that the agreement specifically excepted from this obligation.

". . . any levy that may be made on account of the Second avenue extension now proposed and the Denny Hill regrade No. 2."

The agreement referred to the "Gwinn lease" as a general guide for the preparation of the sublease to be executed by the parties, but provided that the amount which might be spent in repairs, improvements and alterations, without requiring the filing of a bond to prevent liens, should be increased from $2,000, as fixed in the "Gwinn lease," to $5,000. The agreement also contained a clause to the effect that, in case the first party therein neglected to perform their obligation in accordance with the agreement, the first party should return to the third party therein named the $10,000 deposit "and an additional sum of $10,000 as damages to the third party."

The trial court found that, when this agreement was submitted to appellant on the morning of November 16, appellant stated only one objection thereto, to wit, that the same was offered too late. The trial court

was of the opinion that appellant, having based his refusal to accept the agreement solely upon the ground that the same was presented too late, could not thereafter raise other objections to the form or subject matter thereof, and that as, under all the circumstances, the agreement prepared by respondent was seasonably tendered to appellant, respondent was entitled to judgment as prayed for in its complaint. The matter of whether or not the agreement was seasonably presented is argued at length by both parties. We find it unnecessary to pass upon this question, as in our opinion the agreement, as presented to appellant, did not constitute an acceptance of the proposition open to respondent or constitute a sufficient basis for the establishment of a liability to respondent on the part of appellant.

It clearly appears from respondent's testimony and from the instrument itself that the agreement was intended by respondent to be definite and complete, and that the same did not contemplate further negotiation between the parties as to matters included therein. This agreement, with the check for $10,000, was evidently to be delivered to appellant as definite notice to appellant that respondent had produced a purchaser ready, willing and able to consummate the transaction on the terms outlined by appellant. We are satisfied that respondent's right to recover in this action must be determined upon the terms of the agreement. If the same shows the production by respondent of a tenant able, ready and willing to enter into a sublease on the terms outlined by appellant, then appellant is liable to respondent for its commission; if the agreement does not show this, then appellant is not so liable.

The lease referred to as the "Gwinn lease" is in evidence, and contains a provision to the effect that the tenant named therein shall pay all taxes and assess-

ments that may be imposed upon the demised premises during the term thereof. A similar provision is contained in the lease to Mr. and Mrs. Richardson, and it was, of course, a matter of great importance to them that such a provision be carried over into any sublease which they might make. The agreement presented by respondent contains a provision expressly exempting the subtenant, in the lease to be drawn pursuant thereto, from all liability for the payment of any levy to be made against the property

". . . on account of the Second avenue extension now proposed and the Denny Hill regrade No. 2."

These improvements were in immediate contemplation, and would result in large assessments against the property proposed to be sublet.

The agreement also provides for a modification of the clause in the "Gwinn lease" referring to repairs or improvements to be placed upon the property, by raising the amount which could be expended therefor without the filing of a bond to secure the property against liens, from $2,000 to $5,000. The agreement further states that in case the first party therein named (appellant's principals) should fail to execute the sublease, not only should the $10,000 received as earnest money be returned to Mr. Duryee, but appellant's principals should pay to him "an additional sum of $10,000 as damages."

Mr. Duryee, called as a witness on the part of respondent, testified that appellant read the earnest money receipt when the same was presented to him on the morning of November 16, but, on cross-examination, qualified his testimony by stating:

"He turned the pages, page by page, and I thought he had time to read it over."

Appellant denied that he read the instrument, and the court found that he only

". . . had glanced at the paper and said that he could not sign it in any event without submitting it to his attorney; that plaintiff was too late; that his option had expired."

In our opinion the agreement, as submitted to appellant, varied so greatly from the terms of the proposed deal, as outlined in the letters which had passed between the parties to this action, as to fail to indicate the production of a tenant willing to accept the proposition open to respondent, and that the same amounted to no more than a counter proposition submitted to appellant by respondent. It is not the law of this jurisdiction that a person, situated as was appellant when the agreement was presented to him, who believes that the acceptance tendered to him is so tendered too late, is required to immediately examine a lengthy document embracing a transaction involving many thousands of dollars, and, at his peril, at once call attention to all the matters contained therein which he may deem objectionable.

The objection that the offer comes too late is, if well taken, a complete defense to any claim which the person offering the agreement may seek to establish against the other party to the transaction, and this claim, if made in good faith, (and we find no reason for doubting appellant's good faith in stating to Mr. Duryee that the offer came too late) was a sufficient statement of appellant's position to justify appellant's refusal to at that time proceed further with the proposition, and to excuse appellant from an immediate and careful perusal of the instrument offered and the statement of further objections thereto, paragraph by paragraph, granting that such an obligation would under any circumstances have rested upon appellant. The court found that appellant stated that he could not in any event execute the agreement without first consult-

ing his attorney, which would seem to be a reasonable position for appellant to take.

The fact that the proposed agreement exempted the tenant, in the sublease proposed thereby to be executed, from the payment of certain special assessments, was a most material variation from the provision of the Gwinn lease, to the effect that the lessee should pay all assessments levied against the property. This provision of the agreement alone was probably sufficient to render the same no substantial acceptance of the offer open to respondent. The further provision in the agreement, to the effect that appellant's principals, should they fail to carry out the same according to its terms, should be liable for damages in the sum of $10,000, finds no basis in the letters between the parties, above quoted, nor did this clause of the agreement have anything to do with the terms of the sublease itself. It is true that Mr. Duryee testified that he would have been glad to have discussed the proposed agreement, and would have modified the same to meet appellant's objections thereto, but this alleged willingness on his part comes too late. He deliberately placed his acceptance in writing and so submitted it, and the writing which he prepared varies too much from the proposition which was open to him to be held to be even a substantial acceptance thereof.

Respondent contends that certain oral negotiations between the parties to this action were also a part of the contract between them, and that it is evident that all the minor details of a voluminous lease could not be set forth in letters or even oral conversations, but must be left to future adjustment. Granting, for the purpose of argument, that this is true, the variations between the agreement prepared by respondent and the admitted and recognized terms of the offer

are too considerable to bring this case within the rule contended for by respondent.

Respondent argues that the agreement was merely tentative or preliminary, and that if appellant had any objection to any of its terms, it would have been changed, and that it is really immaterial what provisions were set forth in the agreement. We cannot agree with this contention. If the agreement had contained provisions covering matters not referred to in the Gwinn lease or in the letters between the parties, but for some reason proper to be included in the lease to be executed as a result of the negotiations between the parties to this action, it might be urged that such provisions were open to some discussion; but the provision in the agreement in regard to the assessments is a direct departure from the provision contained in the Gwinn lease covering the matter of the payment of assessments, and manifestly fails to comply with the terms of the offer made by appellant to respondent. We cannot escape from the conclusion that this portion of the agreement, and the portion thereof providing for the payment of $10,000 as damages by appellant's principals, constitute material departures from the clearly understood terms of the proposition open to respondent and make the agreement prepared by respondent and presented to appellant no more than a counter proposition to appellant from respondent.

Respondent cites many cases, several of which hold that when a broker, who has a contract under which he can earn a commission if he produces a buyer ready, able and willing to purchase on the terms prescribed by the owner, produces a prospective purchaser ready, able and willing to substantially comply with these terms, certain objections must be raised by the owner when the proposition is submitted to him or

they will be deemed waived. These cases might be in point if appellant were here objecting to the agreement only on the ground that respondent's principal is not disclosed therein, or if he were objecting to some portion of the agreement referring to a matter not covered either by the letters of the parties or the Gwinn lease, and which was not of substantial moment, or of the essence of the transaction. These cases are not in point here, as the provision for the exception of the assessments mentioned therein was in direct contravention to the terms of the Gwinn lease, and made an entirely different contract from that contemplated by the parties, as expressed in their letters.

If, as respondent contends, appellant is bound by the agreement as submitted to him, he would also be bound had the same provided that his principals would pay all taxes and assessments, the difference between an agreement so providing and the one actually submitted, excepting certain particular assessments, being one of degree only and not of principle. Respondent itself chose the method which it followed in signifying to appellant its production of a tenant, whether with or without appellant's knowledge or approbation is immaterial, and prepared in writing its statement of what the purchaser it claimed to have produced would agree to. It cannot now be heard to urge that it did not mean what it formally stated, and that it would gladly have changed its offer in substantial and important particulars to meet any objection on the part of appellant.

The agreement was evidently prepared in view of the Gwinn lease, specifically referring thereto and providing that the same should be used as a guide in preparing the sublease, which it was contemplated would be executed by appellant's principals to respondent's client. Notwithstanding this, the agreement attempts

to modify the Gwinn lease in a most important particular and to bind appellant's principals to pay certain assessments, the amount of which was not mentioned, but which would undoubtedly come to several thousand dollars. The terms offered were, in this particular at least, clear and specific and were not met by respondent.

Respondent relies upon the case of *Montgomery v. De Picot,* 153 Cal. 509, 96 Pac. 305, an action for specific performance of a contract for the sale of real estate. This decision was largely based upon § 2076 of the California code of civil procedure, which provides that one to whom a tender is made must at the time specify any objection he may have to the money, instrument or property tendered, or he must be deemed to have waived such objection. No such section as this is contained in the code of this state, and consequently the decisions of the California court construing the section referred to, when based thereon, are of little aid to us.

In the case of *Moore v. Gould,* 108 Kan. 99, 193 Pac. 1057, the owner of a farm listed it with a real estate broker, the matter of an existing mortgage on the farm not being discussed at the time the listing was made. The broker found a purchaser who was willing to pay all cash or assume the mortgage, and prepared a memorandum of agreement providing for the assumption of the mortgage by the purchaser, which he supposed would best serve the owner's interests. Meantime, the owner had accepted a down payment on the farm from another party, and refused to convey to the broker's client or to pay the commission. The court held that the broker was entitled to his compensation, as he had produced a purchaser able, ready and willing to buy for cash or by assumption of the mortgage, as the seller desired. The broker endeavored to meet a sit-

uation not covered by his listing, the owner refused to sell solely because he had otherwise disposed of his property. This case is not helpful in determining the issues between the parties to this action.

Respondent also cites the case of *Brigham v. Cason,* 233 S. W. (Tex. Civ. App.) 530, in which it was held that a husband who listed real estate which was the homestead of himself and his wife, was liable to a broker for a commission for finding a purchaser, notwithstanding the fact that he was unable to sell the property because his wife refused to join in the sale. This was simply the application of a well known rule that a broker has earned his commission when he produces a purchaser willing to buy on the listed terms, even though the owner who listed the property is unable to convey good title. The opinion states that the owner contended that, because the buyer wanted him to furnish an abstract which he had not agreed to do, the broker had not produced a purchaser in accordance with the brokerage contract. The court does not discuss this proposition at length, but finds a sufficient answer to the owner's contention in the fact that his wife absolutely refused to join in a deed of the homestead on any terms, and did not base her refusal upon the fact that the purchaser wanted an abstract.

Respondent also cites the case of *Railway Co. v. McCarthy,* 96 U. S. 258, which was an action against a railroad company for damages alleged to have been suffered by McCarthy by reason of injuries suffered to some of his cattle while being shipped over the defendant's railroad. The railroad company proved, upon the trial of the action, that it had been impossible to forward the cattle on a particular Sunday, for want of cars. Later, the company sought to prove a Sunday law of the state of West Virginia, and the court held that the railroad company should not be permitted to

assign an added ground for its position which was ''an afterthought suggested by the pressure and exigencies of the case.'' The facts of the case last cited are so utterly different from those of the case at bar that the language used by the supreme court in its opinion is not applicable to the situation now before us.

In the case of *Carstens v. Nut House,* 96 Wash. 50, 164 Pac. 770, this court held that it plainly appeared from the evidence, as a whole, that the seller who was objecting to the payment of a commission, had approved the sales relied upon by the broker in so far as the financial ability of the purchasers to pay for the goods sold was concerned, and that therefore strict proof of the financial ability of the purchasers to pay for the goods which they contracted through the broker to buy, need not be proven. The seller had actually consummated the sale to one of the purchasers produced by the broker, and received the money for the goods sold. This court held that the condition of the proof upon this branch of the case was such that the broker was not called upon to prove the financial responsibility of the purchasers. This decision has no bearing upon the points which we deem controlling in the case at bar.

In the following cases principles of law are laid down which we deem applicable to the question before us for determination: The supreme court of Michigan in the case of *Eggleston v. Wagner,* 46 Mich. 610, 10 N. W. 37, says:

''The question is whether on the facts stated by Wagner and not controverted by Eggleston a contract of sale was actually constituted; or in other words whether the acts of Wagner on June 30th were in any such sense responsive to the offer from Eggleston as to bring the parties into the alleged contract relation. The existence of a contract is a question independent of circumstances which may excuse its performance, and as

no contract could come into existence without an agreement of minds it becomes a vital consideration whether the proposal made by Eggleston and the acts of Wagner relied on as acceptance had reference to the same thing or things in the same sense. If in answer to a proposal to grant Black Acre a person replies that he is ready to close the matter and will take White Acre there is no acceptance. Neither is there an acceptance where executory proceedings on each side are involved in the proposal and the party professing to accept introduces a variance and formulates his adoption of the offer with conditions and qualifications which essentially alter some of the constituents or materially vary the effect.''

The same court, in the later case of *Sharrar v. Nestle,* 222 Mich. 538, 193 N. W. 239, in deciding that a broker was not entitled to a commission from the owner of a farm which had been listed with him for sale, the written listing containing a provision that: ''All lumber and barn frame to be reserved. Some of the rosebushes and peonies to be reserved,'' when the acceptance contained no reference to either of these matters and also gave the purchaser, at his option, the privilege of paying the purchase price sooner than provided for in the listing agreement, stated that the acceptance was insufficient, and that the plaintiff, the real estate broker, had failed to bear the burden resting upon him to show that he had complied with the conditions under which he was authorized to find a purchaser.

In the case of *Colburn v. Seymour,* 32 Colo. 430, 76 Pac. 1058, the supreme court of Colorado held that a real estate broker, in order to recover from his client a commission, must affirmatively prove that he has performed his contract, produced a purchaser who has accepted the owner's offer, and that except for the fault of the owner the sale would have been effected.

The United States Circuit Court of Appeals for the Eighth Circuit, in the case of *Burke v. Lockhart,* 287 Fed. 117, held that:

"The proposition of law is well settled that, before a real estate broker can recover a commission under the circumstances shown here, he must have produced a purchaser ready, able, and willing to buy the property in question according to the strict terms upon which it had been placed in his hands as agent for sale, and has no authority to change any of the terms imposed by the principal, such as the price, time of payment, rate of interest, . . ."

The court held erroneous an instruction to the effect that, if the owner refused to carry out the sale because the terms were different from those prescribed by him and so stated to the broker, the jury should find for the defendant (the land owner), but if the jury should find from the evidence that the owner refused to carry out the deal without basing his refusal upon the fact that the terms offered were different from those prescribed, then the owner could not rely upon such difference as a defense, and in the event that the jury so found, the verdict should be for the plaintiff. The circuit court also decided that testimony on the part of the proposed purchaser, to the effect that, at the time he was negotiating for the purchase of the land, he would have been willing to sign a contract for the purchase thereof on the exact terms prescribed by the defendant, was improperly admitted because it did not appear that any such offer was ever made to the land owner, or that the purchaser's willingness to meet the prescribed terms was disclosed or communicated to the owner prior to the time the property was withdrawn from the market.

Granting that the time limited by appellant for the production of a tenant by respondent was extended to include the presentation to appellant by respondent of

the agreement which it had prepared, we are of the opinion that the testimony fails to show that respondent, within the period at its disposal, produced a tenant ready, able and willing to enter into a sublease of the premises upon the terms prescribed by appellant, or to notify appellant of the production of such a tenant. The agreement, as prepared by respondent and by it delivered to appellant, varies too much from the understood terms prescribed by appellant to constitute even a substantial compliance therewith, or anything more than a counter offer on the part of respondent or its principal. We find no act on the part of appellant, at the time the agreement was presented to him, which estops him from claiming that the agreement did not conform to the conditions prescribed by appellant, and we conclude that the trial court erred in entering judgment against appellant.

The judgment of the trial court in respondent's favor is reversed, with instructions to dismiss the action.

MITCHELL, C. J., TOLMAN, and FULLERTON, JJ., concur.

HOLCOMB, J. (dissenting)—The facts are ample to support the finding of the trial court, that the transfer of the sublease was simply evaded after respondent had found such a tenant as the original proposal required, merely upon the ground that it "was too late."