# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Personal
Restraint of:

CHRISTOPHER MALAGA,

                    Petitioner.

DIVISION ONE

No. 81558-0-I

UNPUBLISHED OPINION

DWYER, J. — Christopher Malaga filed this personal restraint petition challenging his convictions for murder in the first degree and assault in the second degree.[1] In his petition, Malaga contends that (1) the trial court erred by excluding the admission of certain evidence, (2) the performance of his trial attorneys[2] was constitutionally deficient in multiple ways, (3) the performance of his appellate attorney during his direct appeal was constitutionally deficient, (4) the evidence was insufficient to support his conviction of assault in the second degree, (5) the prosecutor engaged in prosecutorial misconduct, and (6) the jury was not unanimous as to which assault served as the predicate felony for the conviction of murder in the second degree. Furthermore, in a supplemental petition, Malaga asserts that he was deprived of his constitutional right to testify

---

[1] A jury also convicted Malaga of murder in the second degree. However, at sentencing, the State moved to vacate this conviction, asserting that the conviction violated the prohibition against double jeopardy. Pursuant to this motion, the trial court vacated the conviction for murder in the second degree.

[2] Malaga was represented by two attorneys in the trial court.

on his own behalf. Because Malaga fails to establish an entitlement to relief on any of these claims, we deny relief and dismiss the petition.

I

Most of the facts underlying this personal restraint petition are set forth in our opinion resolving Malaga's direct appeal, State v. Malaga, No. 75267-7-I, slip op. at 2-4 (Wash. Ct. App. Nov. 27, 2017) (unpublished), https://https://www. courts.wa.gov/opinions/pdf/752677.pdf. Malaga claimed therein both that the evidence adduced at trial was insufficient to support his conviction for murder in the first degree and that the trial court erred by excluding certain evidence. Malaga, No. 75267-7-I, slip op. at 1. We held that sufficient evidence supported his conviction for murder in the first degree and that the trial court did not err by excluding the disputed evidence. Malaga, No. 75267-7-I, slip op. at 7, 10-11.

The mandate terminating direct review was issued on August 16, 2019. On June 10, 2020, Malaga filed a pro se personal restraint petition. In this petition, Malaga asserts—for the first time—that he was present at the scene of the shooting. According to Malaga, Adam Garcia, the homicide victim, died as a result of Christopher Knowles bumping into Malaga's hand, causing the firearm he was holding to accidentally discharge. Conversely, at trial, Malaga's attorneys did not advance this theory as a defense. Instead, his attorneys argued that Malaga was not present at the scene of the shooting.

On September 29, 2021—more than two years after we filed the mandate terminating direct review—an attorney now representing Malaga filed a supplemental brief, raising a new argument. In this supplemental brief, Malaga

2

contends that he was deprived of the right to testify under the Fifth, Sixth, and Fourteenth Amendments of the federal constitution and article I, section 22 of our state constitution.

II

Malaga first asserts that the trial court erred by prohibiting the admission of other suspect evidence. The trial court's ruling on other suspect evidence precluded Malaga from introducing evidence seeking to establish that several other people—including Nicholus Vazquez and Christopher Knowles—committed the crimes charged. In his petition, Malaga asserts that this ruling also prohibited the admission of evidence tending to prove that Knowles bumped into Malaga's hand while Malaga was holding the firearm, causing Malaga to accidentally discharge the firearm and kill Garcia. For several reasons, however, Malaga is not entitled to relief on this claim.

First, Malaga is not entitled to relief insofar as he asserts that the trial court erred by prohibiting the admission of other suspect evidence to establish that Vazquez committed the crimes charged. Indeed, in our opinion concerning Malaga's direct appeal, we held that the trial court properly excluded other suspect evidence with regard to Vazquez. Malaga, No. 75267-7-I, slip op. at 10-11.

> It is well established that
>
> "a personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." In re Personal Restraint of Lord, 123 Wn.2d 296, 303, 868 P.2d 835 (1994) (citing In re Personal Restraint of Taylor, 105 Wn.2d 683, 688, 717 P.2d 755 (1986)). This burden can be met by showing an intervening change in the

3

law """or some other justification for having failed to raise a crucial point or argument in the prior application.""" In re Personal Restraint of Gentry, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999) (quoting Taylor, 105 Wn.2d at 688 (quoting Sanders v. United States, 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)).

In re Pers. Restraint of Stenson, 142 Wn.2d 710, 719-20, 16 P.3d 1 (2001).

Malaga does not point to an intervening change in the law or provide any other reason justifying relief. Therefore, he is not entitled to relief insofar as he challenges the trial court's ruling on other suspect evidence concerning Vazquez.

Next, Malaga is not entitled to relief insofar as he contends that the trial court wrongly precluded him from introducing evidence that Knowles bumped into his hand, causing Malaga to accidentally discharge the firearm and kill Garcia. Malaga does not assert that this claim of error is of a constitutional magnitude. As such, we review this claim on nonconstitutional grounds. "[T]o receive collateral review of a conviction on nonconstitutional grounds, a petitioner must establish that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 812, 792 P.2d 506 (1990). Malaga does not meet this burden.

In its order prohibiting the admission of other suspect evidence with regard to Knowles, the trial court reasoned:

> Bryce Hill and Christopher Knowles were present at the scene, and witnessed Malaga shoot the unarmed Adam Garcia in cold blood. Other than presence, there is no "train of facts or circumstances" pointing to either of them as the guilty party.

This ruling did not prohibit Malaga from introducing evidence that Knowles bumped into Malaga's hand, causing Malaga to accidentally discharge the

4

firearm. Rather, this ruling merely prohibited Malaga from introducing evidence seeking to prove that Knowles committed the charged offenses. Indeed, other suspect evidence refers to "evidence suggesting another person *committed the charged offense.*" State v. Strizheus, 163 Wn. App. 820, 830, 262 P.3d 100 (2011) (emphasis added) (citing State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932)). Therefore, Malaga was free to introduce evidence tending to prove that Knowles bumped into his hand, causing the firearm to discharge against Malaga's will. He did not do so.

In any event, the trial court properly prohibited evidence seeking to prove that Knowles committed the crimes charged. In order for evidence to be admitted suggesting that another person committed the crimes charged, "the defendant must lay a foundation; that is, he must establish a train of facts or circumstances as tend clearly to point out someone besides the defendant as the guilty party." Strizheus, 163 Wn. App. at 830 (citing Downs, 168 Wash. at 667). Malaga does not cite to any evidence indicating that Knowles committed the crimes charged.

Accordingly, Malaga's claim of error fails.

III

Malaga next contends that the performance of his trial attorneys was constitutionally deficient because they did not advance a defense theory that Malaga accidentally discharged the firearm as a result of Knowles bumping into Malaga's hand. Again, we disagree.

5

"Under the sixth amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings." In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004) (citing Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996); In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001)).

To successfully challenge the effective assistance of counsel, a petitioner bears the burden to prove that

> "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."

Davis, 152 Wn.2d at 672-73 (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

"This court approaches an ineffective assistance of counsel argument with a strong presumption that counsel's representation was effective." Davis, 152 Wn.2d at 673 (citing McFarland, 127 Wn.2d at 335). "A criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 141, 385 P.3d 135 (2016) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

However, "'[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient.'" Caldellis, 187 Wn.2d at 141 (quoting State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). As such, "this court will not find ineffective assistance of counsel if 'the actions of counsel complained of go to the theory of the case or to trial tactics.'" State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994). Indeed, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. "'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" Caldellis, 187 Wn.2d at 141 (internal quotation marks omitted) (quoting State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011)).

Malaga does not establish that the performance of his trial attorneys was deficient. Here, Malaga's trial attorneys argued that Malaga was not present at the scene of the shooting. For several reasons, advancing this defense was a reasonable tactic. First, during a police interrogation, Malaga denied being present at the scene of the shooting. In light of this fact, defense counsel engaged in a reasonable trial tactic by maintaining this defense at trial. Indeed, had defense counsel presented a new theory at trial (namely, that Malaga was, in fact, present at the scene of the crime but accidentally discharged the firearm), the jury may have been inclined to question why Malaga initially denied being present at the scene of the shooting. As a result, Malaga's credibility may have suffered.

Second, evidence was adduced at trial to support defense counsel's argument that Malaga was not present at the scene of the shooting. Indeed, Knowles testified that, when Garcia was making telephone calls in a search for cocaine before they met with Garcia and Malaga, Knowles heard the name "Nick, Nicole, Nikki. Something along those lines." Furthermore, after the shooting occurred, Knowles initially identified a photograph of Vazquez from a photomontage as the person who most resembled the shooter. At the bottom of the photograph of Vazquez, Knowles wrote, "He most resembled the guy I saw." During closing argument, defense counsel relied on this evidence to assert that a reasonable doubt existed as to whether Malaga committed the crimes charged. In light of the evidence adduced at trial, this tactic was reasonable.

Finally, there was no evidence adduced at trial indicating that Knowles bumped into Malaga's hand, causing the firearm to discharge against Malaga's will. To the contrary, Knowles testified that, when Malaga shot Garcia, Knowles was positioned in a location that was both separated from Malaga and out of Malaga's sight:

> After I realized that I wasn't going to be able to get them to leave, so Adam's facing Mr. Malaga, I walked to – would have been Mr. Malaga's right side where he couldn't see me. Because he had the gun in his right hand. Then he had his hood on. So I kind of more like walked out and down a little bit, kind of like a triangle, I guess you'd say, between the three of us. And then I was going back towards him to grab him. *But before I did that, he shot him*.

(Emphasis added.)

8

Defense counsel was not required to pursue a defense that was not supported by the evidence. Accordingly, Malaga's claim of ineffective assistance of counsel fails.

IV

Malaga next asserts that the performance of his trial attorneys was constitutionally deficient because they did not request that the court instruct the jury on the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. We disagree.

Manslaughter in the first degree requires a showing that the defendant recklessly caused the death of another person. RCW 9A.32.060.[3] On the other hand, manslaughter in the second degree requires a showing that the defendant, with criminal negligence, caused the death of another person. RCW 9A.32.070.[4] Thus, to pursue a defense that Malaga was guilty of only manslaughter, Malaga would have been required to concede that he was both present at the scene of the shooting and discharged the firearm either recklessly or with criminal negligence. Such a defense would have conflicted with the theory advanced at trial that Malaga was not present at the scene of the crime.

We have explained that "[w]here a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy." State v. Hassan, 151 Wn.

---

[3] This statute provides, in pertinent part:
(1) A person is guilty of manslaughter in the first degree when:
(a) He or she recklessly causes the death of another person.
RCW 9A.32.060.
[4] This statute provides, in pertinent part: "A person is guilty of manslaughter in the second degree when, with criminal negligence, he or she causes the death of another person." RCW 9A.32.070(1).

9

App. 209, 220, 211 P.3d 441 (2009) (citing Strickland, 466 U.S. at 691). Because requesting a lesser included offense instruction for either manslaughter in the first degree or manslaughter in the second degree would have weakened Malaga's claim that he was not present at the scene of the shooting, defense counsel engaged in a reasonable trial strategy by not requesting either of these instructions.

Accordingly, this claim of ineffective assistance of counsel fails.

V

Malaga next contends that the performance of his trial attorneys was constitutionally deficient because they did not request the court to instruct the jury on the lesser included offense of unlawful display of a weapon. According to Malaga, his attorneys should have requested this instruction in defense to the charge of assault in the second degree. Again, we disagree.

RCW 9.41.270(1) provides:

It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

For at least two reasons, defense counsel employed a legitimate trial tactic by not requesting a lesser included offense instruction on unlawful display of a weapon. First, by requesting such an instruction, Malaga would have been required to concede that he was present at the scene of the shooting. As already explained, such a concession would have weakened Malaga's claim of innocence. As a result, defense counsel engaged in a legitimate tactic by not

10

requesting a lesser included offense instruction for unlawful display of a weapon.

See Hassan, 151 Wn. App. at 220.

Furthermore, the evidence adduced at trial demonstrates that Malaga was not entitled to this lesser included offense instruction.

> A defendant is entitled to an instruction on a lesser included offense if two conditions are met: each of the elements of the lesser offense must be elements of the offense charged (the legal prong), and the evidence must support an inference that only the lesser crime was committed (the factual prong).

State v. Ward, 125 Wn. App. 243, 248, 104 P.3d 670 (2004) (citing State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)), abrogated on other grounds by Grier, 171 Wn.2d at 38-40.

Here, the State concedes that the legal prong is satisfied. However, the State asserts that the factual prong is not satisfied. We agree. Indeed, in Ward, we explained:

> To convict a defendant of second degree assault, the jury must find specific intent to create reasonable fear and apprehension of bodily injury. State v. Byrd, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Such intent may be inferred from pointing a gun, but not from mere display of a gun. State v. Eastmond, 129 Wn.2d 497, 500, 919 P.2d 577 (1996). To convict a defendant of unlawful display, the jury must find the defendant displayed a weapon in a manner manifesting an intent to intimidate another or warranting alarm for another's safety. RCW 9.41.270(1).

125 Wn. App. at 248.

The record contains no evidence indicating that Malaga merely displayed a firearm in a manner manifesting an intent to intimidate Knowles. To the contrary, Knowles testified that Malaga pointed the firearm directly at Knowles's face:

11

> Q. So Mr. Malaga pointed the gun at Adam. Did he point the gun anyplace else?
>
> A. He pointed it at me. Told me to back up or something. I don't remember. And then he went back to Adam. He mainly kept it on Adam. So . . .
>
> Q. Okay. And when he pointed it at you, this is after— This is after it had been racked; right?
>
> A. Yes.
>
> Q. Was it pointed directly at you?
>
> A. Yes.
>
> Q. Could you see down the barrel?
>
> A. I could see it, yes.
>
> Q. You could see the end of the barrel?
>
> A. Yes.

Because there was no evidence adduced at trial to warrant a lesser included offense instruction for unlawful display of a weapon, defense counsels' performance was not deficient for failing to request such an instruction.

Accordingly, this claim of ineffective assistance of counsel fails.

VI

Malaga also contends that a constitutionally insufficient quantum of evidence was adduced at trial to support his conviction for assault in the second degree. We disagree.

The due process clauses of the federal and state constitutions require that the government prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (citing U.S. CONST. amend. XIV, § 1); State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017) (citing WASH. CONST. art. I, § 3). After a verdict, the relevant question when reviewing a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

12

the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201.

Here, the third amended information provided, with regard to count three: "On or about the 18th day of October, 2014, in the State of Washington, the above-named Defendant did assault another, to wit: CHRISTOPHER RAYMOND KNOWLES, with a deadly weapon; contrary to the Revised Code of Washington 9A.36.021(1)(c)." The cited statute provides, in relevant part:

> (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
> . . .
> (c) Assaults another with a deadly weapon.

RCW 9A.36.021.

"There is no definition of assault in the criminal code, and Washington courts apply the common law definitions of assault." State v. Kier, 164 Wn.2d 798, 806, 194 P.3d 212 (2008). "One common law form of assault involves putting another in apprehension or fear of harm, regardless of whether the actor intends to inflict or is incapable of inflicting such harm." Kier, 164 Wn.2d at 806.

A sufficient quantum of evidence was adduced at trial to support Malaga's conviction for assault in the second degree. As already explained, Knowles testified that Malaga pointed a loaded firearm directly at his face after the firearm had been "racked." A rational trier of fact could conclude from this evidence that,

by pointing the loaded firearm at Knowles's face, Malaga put Knowles in apprehension or fear of harm.

Accordingly, sufficient evidence supports the jury's determination that Malaga committed assault in the second degree.[5]

VII

Malaga next asserts that the performance of his trial attorneys was constitutionally deficient because they did not challenge the admission of certain information obtained from the cell phones of Garcia, Hill, or Malaga.  According to Malaga, this information was obtained in violation of Washington's privacy act.[6]  However, because the challenged evidence was not obtained in violation of the privacy act and was, instead, lawfully obtained pursuant to four search warrants, we disagree.

Information obtained in violation of the privacy act is inadmissible in court. RCW 9.73.050.  The privacy act is violated when "'(1) a private communication transmitted by a device . . . was (2) intercepted or recorded by use of (3) a device designed to record and/or transmit (4) without the consent of all parties to the private communication.'" In re Pers. Restraint of Hopper, 4 Wn. App. 2d 838, 845, 424 P.3d 228 (2018) (alteration in original) (quoting State v. Roden, 179 Wn.2d 893, 899, 321 P.3d 1183 (2014)).  "We will generally presume that conversations between two parties are intended to be private." Roden, 179

---

[5] Malaga also contends that the performance of his appellate attorney on direct review was deficient because this attorney did not challenge the sufficiency of the evidence with regard to his conviction for assault in the second degree.  However, because sufficient evidence supports this conviction, this claim of ineffective assistance of counsel fails.

[6] Ch. 9.73 RCW.

Wn.2d at 900. However, a communicating party impliedly consents to the recording of a conversation when that party communicates by use of a device that he or she knows to record data. State v. Racus, 7 Wn. App. 2d 287, 299, 433 P.3d 830 (2019) (citing State v. Townsend, 147 Wn.2d 666, 676, 57 P.3d 255 (2002)).

There are several reasons why the privacy act was not violated herein. First, the information in question was not intercepted within the meaning of the privacy act. In Roden, our Supreme Court defined "intercept" under the privacy act as "to 'stop . . . before arrival . . . or interrupt the progress or course.'" 179 Wn.2d at 904 (alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1176 (2002)). Here, the police obtained the information from the cell phones of Garcia, Hill, and Malaga *after* the information had already been transmitted. Therefore, this information was not intercepted.

Next, the information in dispute was recorded on a device that Garcia, Hill, and Malaga knew to record data—namely, their cell phones. As such, they consented to this information being recorded. See Racus, 7 Wn. App. 2d at 299.

Finally, the information in question was lawfully obtained pursuant to four search warrants.[7] In particular, Detective Jim Hoagland testified that he obtained information from Garcia's cell phone pursuant to a search warrant issued by a

---

[7] RCW 9.73.270(2) provides, in pertinent part: "The state and its political subdivisions shall not, by means of a cell site simulator device, collect or use a person's electronic data or metadata without . . . a warrant, based upon probable cause, that describes with particularity the person, place, or thing to be searched or seized." Under the privacy act, a "'[c]ell site simulator device' means a device that transmits or receives radio waves for the purpose of . . . intercepting, obtaining, accessing, or forwarding the communications, stored data, or metadata of a communications device." RCW 9.73.260(1)(f)(ii). Herein, there is no evidence that the police used such a device to obtain the information in question. In any event, the police obtained the information in dispute pursuant to four search warrants.

15

superior court judge. Next, Detective Hoagland testified that he obtained a "second search warrant" in order to obtain an override code from Malaga's cell phone provider to unlock Malaga's cell phone. Although Detective Hoagland obtained the override code from the cell phone provider, he was unable to unlock Malaga's cell phone with this code. As a result, Detective Cecil Edward Wallace obtained another search warrant in order to obtain information from the memory chip that was located inside Malaga's cell phone. Furthermore, Detective Manuel Silveira testified that he obtained a search warrant in order to obtain information from Hill's cell phone.

Because the information in dispute was not obtained in violation of the privacy act and, instead, was lawfully obtained pursuant to search warrants, defense counsel was not required to futilely challenge the admission of this information under the privacy act. Accordingly, this claim of ineffective assistance of counsel fails.[8]

VIII

Malaga next contends that the jury was not unanimous as to which assault served as the predicate for his conviction of murder in the second degree.

---

[8] Malaga also asserts that his attorney on direct appeal provided deficient performance by failing to challenge the admission of this information under the privacy act. Because this information was lawfully obtained, this claim of ineffective assistance of counsel also fails.

Additionally, Malaga contends that the prosecutor engaged in prosecutorial misconduct by referring to this cell phone information during closing argument. "To prevail on a claim of prosecutorial misconduct, the defendant must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Because the cell phone information was lawfully obtained, the prosecutor did not engage in improper conduct by referring to this information during closing argument. As such, Malaga's claim of prosecutorial misconduct is without merit.

However, because the trial court vacated the conviction for murder in the second degree, this issue is moot.  Therefore, we need not address this issue.[9]

IX

In his supplemental brief, Malaga contends that he was deprived of the right to testify on his own behalf in violation of the Fifth, Sixth, and Fourteenth Amendments of the federal constitution and article I, section 22 of our state constitution.  However, because the advancement of a new claim in the supplemental brief constituted an amendment to the petition, this claim is time barred.  Thus, we must decline to consider the claim.

RCW 10.73.090(1) provides: "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face

---

[9] In any event, the prosecutor clearly elected which assault served as the predicate for the charge of murder in the second degree.

"When the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act." State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007).  An election by the State need not be formally pled or incorporated into the information.  State v. Carson, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015).  As long as the election clearly identifies the particular acts on which charges are based, verbally informing the jury of the election during closing argument is sufficient. Carson, 184 Wn.2d at 227.

During closing argument, the prosecutor stated:

[E]ven if Mr. Malaga did not intend to kill Adam Garcia but he intentionally assaulted him and Adam died as a result, under our law it's still considered Murder and it's what they call Felony Murder.

Now, it's – it's a weird thing.  This is the law.  It's what you have to work with.

And what you should do is consider each of them in turn.  And – and have the discussion as:  Did it happen?  Was it done with intent to kill?

Arrive at your verdict.

And then consider the next one, which is Option B in here.  There's an "or" between A and B.

Did it happen during the course of Assault in the Second Degree?

Did he commit the crime of Assault in the Second Degree against Adam and Adam died as a result?

Thus, the prosecutor made a clear election during closing argument that the assault against Garcia served as the predicate for the charge of murder in the second degree.

17

and was rendered by a court of competent jurisdiction." There are six statutory exceptions to this time limitation:

> The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:
>     (1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion;
>     (2) The statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct;
>     (3) The conviction was barred by double jeopardy under Amendment V of the United States Constitution or Article I, section 9 of the state Constitution;
>     (4) The defendant pled not guilty and the evidence introduced at trial was insufficient to support the conviction;
>     (5) The sentence imposed was in excess of the court's jurisdiction; or
>     (6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard.

RCW 10.73.100.

Here, the judgment entered against Malaga became final on August 16, 2019.[10] Malaga timely filed his pro se personal restraint petition on June 10, 2020. However, the amended petition advancing a new claim—styled as a supplemental brief—was filed on September 29, 2021. This was more than two years after the judgment became final.

---

[10] The judgment was entered on May 6, 2016. However, the judgment became final when the mandate terminating direct review was issued on August 16, 2019.

We have explained that a "supplemental brief serves as an amended petition when it adds a claim not raised in the original petition." In re Pers. Restraint of Wilson, 169 Wn. App. 379, 393, 279 P.3d 990 (2012). In his supplemental petition, Malaga asserts—for the first time—that he was deprived of the right to testify on his own behalf. Notably, none of the exceptions enumerated in RCW 10.73.100 apply to such claims. Because the amended petition was filed more than one year after the judgment became final, this claim is time barred. RCW 10.73.090(1).

Malaga contends that this claim is not time barred because, according to Malaga, this claim was contained within his pro se petition. In support of this argument, Malaga cites to the following statement that he made in a declaration that was attached to his pro se petition:

> I felt that I did not have a chance to tell my story or take the stand. I would have and express a desire to testify. I was told that I could not testify to anyone else's cause of the killing.

However, this statement is equivocal. It is plainly made in support of Malaga's argument that the trial court erred by excluding the admission of other suspect evidence. As such, this statement does not advance a claim that Malaga was deprived of the right to testify on his own behalf. Instead, it merely refers to the trial court's correct evidentiary ruling and its impact on his perceived decision to testify or refrain from doing so.

Malaga next asserts that, pursuant to RAP 1.2(c), we should waive the time limitation imposed by RCW 10.73.090(1). However, this rule provides that "[t]he appellate court may waive or alter the provisions of any of *these rules* in

19

order to serve the ends of justice." RAP 1.2(c) (emphasis added). Because the time limitation in question is a statutory requirement, this time limitation may not be waived by resort to RAP 1.2(c).

Because Malaga's claim that he was deprived of the right to testify on his own behalf is time barred under RCW 10.73.090(1), we may not consider this claim.[11]

For the reasons set forth above, we deny relief and dismiss the petition.

WE CONCUR:

---

[11] Malaga also requests a reference hearing. However, to be entitled to a reference hearing, "the petitioner must state with particularity facts which, if proven, would entitle him to relief." In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Because Malaga does not state any facts with particularity which, if proven, would entitle him to relief, we deny his request for a reference hearing.